BESSIE L. HAGAR, Plaintiff-Appellant, v. STATE FARM FIRE & CASU-
ALTY COMPANY, Defendant-Appellee.

Fourth District    No. 4—86—0697

Opinion filed April 13, 1987.

Kevin P. Fitzgerald, of Thomson, Weintraub & Thompson, of Blooming-
ton, for appellant.

Costigan & Wollrab, P.C., of Bloomington, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Bessie L. Hagar, appeals a summary judgment in favor
of defendant, State Farm Fire & Casualty Company (State Farm),
with respect to her suit requesting payment of additional compensa-
tion for a loss covered by a fire insurance policy issued by State Farm
covering a building owned by her. We reverse and remand for further
proceedings.

On December 16, 1983, plaintiff filed suit against State Farm, al-
leging that under the above policy, State Farm was liable to her for
the actual cash value of the insured building, and had failed and
refused to pay to her the full amount owed under the policy. In its an-
swer, State Farm affirmatively stated that it had paid plaintiff all
sums due under the policy. Its motion for summary judgment was
based on the same grounds.

At the time of the entry of the summary judgment, the following
was undisputed: (1) the policy, issued November 6, 1977, provided, *in-*

*ter alia,* that the property was insured "to an amount not exceeding the amount(s) above specified" against loss by fire "to the extent of the actual cash value of the property at the time of loss"; (2) the policy contained an inflation adjustment endorsement which provided that the amount of insurance stated in the policy increased at the same rate as the Composite Construction Cost Index published by the United States Department of Commerce; (3) the face amount of the policy was $51,500; and (4) the insured building was destroyed by fire on December 15, 1982. The record contains no information as to the status of the foregoing Cost Index at the time of the fire.

The parties also agree that State Farm has paid to plaintiff the total sum of $111,736, consisting of payments first of $76,900 and, then, $34,836 by a check accompanying a letter to plaintiff dated February 1, 1983. According to a filed affidavit of plaintiff's son, Edward P. Hagar, he had her power of attorney to negotiate settlement on the policy. Then, according to the defendant, after further negotiations, agents of State Farm agreed to make the second payment. The parties agree that Edward P. Hagar and Don Hancock, an agent of State Farm, had a conversation at which time Hancock presented to Hagar a document prepared by State Farm and described as a proof of loss. This document was given to Hagar. He presented it to plaintiff who, at all times pertinent, was in California. The parties agree that, with a minor change, the document was signed and sworn to by plaintiff and returned to State Farm. Then, the second check was sent, together with a cover letter, to plaintiff by mail.

A copy of the proof of loss is attached to an affidavit of Donald Revelle, State Farm's claims superintendent. The proof of loss states that the actual cash value of the property destroyed by fire was $141,960 and that "THE TOTAL INSURANCE covering the described property" including their "policy and all other policies" was, at the time of said loss, $111,736. The document also stated that the amount the insured was claiming was the sum of $111,736. A printed portion of the document which made an assignment by the insured to the insurer of all interest in the property insured had been crossed out. The parties agree that elimination of the foregoing language was made at the request of the plaintiff. According to Hancock's affidavit, he interlined the provision before the document was given to Edward P. Hagar. According to plaintiff's affidavit, she made the interlineation after Edward P. Hagar showed the document to her.

The proof of loss documents contained no language whereby plaintiff released State Farm or agreed to do so upon the payment of the additional sum of money. Accordingly, the document does not operate

to release State Farm. The purpose of the question in regard to the total amount of insurance covering the property appears to be inserted in order for the insurer to determine if coverage existed under other policies. The document was prepared by State Farm's agents who were not shown to be unaware of the facts of the covered loss. Plaintiff's signing of this proof of loss containing the statement of the amount of insurance covering the loss, did not, of itself, estop plaintiff from claiming a greater loss.

More troubling is the portion of the proof of loss where plaintiff states that the amount claimed is the sum of $111,736. The trial court relied heavily on this factor in entering summary judgment. The affidavits of both Edward P. Hagar and Hancock show that each affiant understood that State Farm was refusing to pay any more than $111,736 on the claim. However, neither affidavit states that Hagar made any statement of agreement to settle for that amount, and Hagar stated he did not do so. Hancock merely testified that he told Hagar that the $34,836 payment would be the "final payment" by State Farm. Plaintiff filed an affidavit stating she had read her son's affidavit in regard to his negotiations with State Farm and that he had related these conversations to her in the way he had described them in his affidavit. She then stated that she did not intend the proof of loss to be a release. Nevertheless, the copy of Hancock's letter to plaintiff containing the $34,836 check attached to and authenticated by his affidavit states that the amount of the check was in the "total agreed figure between [State Farm] and [her] son, Ed Hagar."

Thus, the record contains substantial evidence from which a trier of fact could conclude that plaintiff, either individually or through her authorized agent, her son, agreed with State Farm to settle a doubtful and uncertain claim upon the payment of the additional $34,836. However, the record indicates that plaintiff was 91 years old and, after receiving the original payment in the sum of $76,900, had been able to continue negotiations as to the amount due her. While both she and her son had admittedly been told that State Farm would pay no more, the record does not show an express agreement to settle the dispute. Under the circumstances, we conclude that a factual dispute exists as to whether the parties agreed to settlement. Thus, under section 2—1005(d) of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(d)) a summary judgment based on an agreement would not have been proper. *Century Display Manufacturing Corp. v. D.R. Wager Construction Co.* (1978), 71 Ill. 2d 428, 376 N.E.2d 993.

State Farm maintains that even if a settlement agreement between the parties is not shown, the proof of loss document and Han-

692

cock's affidavit taken together present undisputed evidence that the amount of coverage did not exceed $111,736. The statement on the proof of loss could, at most, be taken as an admission by a party opponent on a question of fact. The conclusive nature of any such admission is refuted by the affidavits of both plaintiff and Edward P. Hagar in which both deny ever intending to indicate that they considered that sum to be all to which plaintiff was entitled under the policy. We find nothing in Hancock's affidavit indicating any calculation of the amount due under the policy other than his bald statement that the sum of $34,836 was due. That statement would be too conclusionary to be entitled to consideration in support of a motion for summary judgment. 87 Ill. 2d R. 191(a).

For the reasons stated, the summary judgment is reversed and the cause remanded to the circuit court of McLean County for further proceedings.

Reversed and remanded.

McCULLOUGH and LUND, JJ., concur.