# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

*Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*,
**2015 IL App (1st) 132350**

</div>

| | |
|---|---|
| Appellate Court Caption | ILLINOIS TOOL WORKS INC. AND ITW FINISHING LLC, Plaintiffs-Appellees, v. TRAVELERS CASUALTY AND SURETY COMPANY, CENTURY INDEMNITY COMPANY, AND THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-13-2350 |
| Filed | January 13, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When plaintiffs' decision to expand their product line to include welding products and other items involving harmful materials such as asbestos and benzene resulted in toxic tort cases filed on behalf of those injured by exposure to the dangerous material, plaintiffs sought declaratory relief that their insurers owed them a duty to defend the underlying suits and the trial court's order finding in favor of plaintiffs was affirmed, since the insurers were required to provide a defense in the cases where the bare underlying allegations, if proved, would render plaintiffs liable, and if plaintiffs are alleged to be individually liable or liable directly and as successors, the insurers had a duty to defend, but if plaintiffs are alleged to be liable only as successors, there would be no duty to defend. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-21325; the Hon. Kathleen Kennedy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Clifton S. Elgarten, Paul W. Kalish, Jennifer R. Devery, and Kelly H. Tsai, all of Crowell & Morning LLP, of Washington, D.C., and Brian C. Coffey, of Cohn Baughman & Martin, and Robert C. Johnson and Daniel E. Feinberg, both of Dentons US, LLP, both of Chicago, for appellants.

John S. Vishneski III, Stanley Nardoni, and Jessica E. Brown, all of Reed Smith LLP, of Chicago, for appellees.

Panel

PRESIDING JUSTICE SIMON delivered the judgment of the court, with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

## OPINION

¶ 1    At issue in this case is whether defendants, plaintiffs' former insurers, have a duty to defend plaintiffs in a multitude of cases brought by individuals that were allegedly injured as a result of exposure to harmful materials while welding or engaging in other building or maintenance activities. The trial court found that defendants have a duty to defend and that they should bear the entire cost. We agree and, accordingly, we affirm.[1]

¶ 2                                 BACKGROUND

¶ 3    Plaintiffs Illinois Tool Works Inc. and ITW Finishing LLC (collectively, Illinois Tool) are companies engaged in the manufacture and distribution of tools, equipment, finishing systems, and consumables. Defendants Travelers Casualty & Surety Company and Century Indemnity Company (collectively, Insurers) are companies in the insurance business that issued policies to Illinois Tool as early as 1971, but no later than 1987. In the late 1980s, Illinois Tool endeavored to expand its product line through a series of acquisitions. One market Illinois Tool entered was the distribution of welding products, beginning with its acquisition of Miller Electric in 1993. It is undisputed that Illinois Tool was not involved in the welding product market prior to its acquisition of Miller Electric.

¶ 4    The underlying suits are toxic tort cases alleging that the plaintiffs therein were injured as a result of exposure to asbestos, benzene, manganese, and other harmful materials. The suits broadly allege that certain companies are liable and the typical case names dozens of companies as defendants. Illinois Tool is named in different capacities in the underlying cases: individually, as a successor in interest to the welding companies it later acquired, or both. Illinois Tool has been successful in getting the claims against it dismissed or obtaining

---

[1]Illinois Tool filed a motion to strike alleged misstatements from the Insurers' opening brief. That motion is denied.

summary judgment on the basis that it was not in the welding consumable business before 1993.

¶ 5 This dispute concerns 10 policies issued to insure Illinois Tool for certain periods between 1971 and 1987. The policies contain different language, but each covers Illinois Tool for claims resulting from bodily injury. All policies also contain a provision that requires the Insurers to defend Illinois Tool in any suit brought against it for bodily injury even if the allegations of the suit are false or groundless. The parties do not currently dispute whether the injuries alleged in the underlying welding cases would be of the type covered by the policy. Instead, the Insurers argue that they cannot be liable because the last policy they issued expired in 1987 and Illinois Tool did not enter the welding product market until 1993.

¶ 6 Illinois Tool filed an action in the circuit court of Cook County seeking, among other things, a declaration that the Insurers owed it a duty to defend the underlying suits. The Insurers filed counterclaims. The parties proceeded to file cross-motions for summary judgment on the duty to defend issue. In a 41-page written order, the trial court found in favor of Illinois Tool. The trial court subsequently entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) indicating that there was no just reason for delaying enforcement or appeal of its summary judgment order. This appeal followed.

¶ 7                                    ANALYSIS

¶ 8 We review the grant of summary judgment *de novo*. *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 24. Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005). If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1016-17 (2005). However, when parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist and that the dispute involves only questions of law, which the court may decide based on the record. *Progressive Insurance Co. v. Universal Casualty Co.*, 347 Ill. App. 3d 10, 17 (2004).

¶ 9 The construction of an insurance policy and the determination of the parties' rights and obligations thereunder are questions of law. *Cook*, 2014 IL App (1st) 123700, ¶ 24. To determine whether an insurer has a duty to defend the insured, a court must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy. *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130593, ¶ 25. When determining whether an insurer has a duty to defend an insured, the allegations in the underlying complaint must be liberally construed in favor of coverage. *Id*. The duty to defend is broader than the duty to indemnify. *American Country Insurance Co. v. Cline*, 309 Ill. App. 3d 501, 512 (1999). An insurer's refusal to defend an insured is justified only if it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the cause within or potentially within coverage. *Rosalind Franklin University of Medicine & Science v. Lexington Insurance Co.*, 2014 IL App (1st) 113755, ¶ 80. When the underlying complaint alleges facts within or potentially within the policy's coverage, the

insurer's duty to defend arises even if the allegations are groundless, false, or fraudulent. *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735, ¶ 12.

¶ 10   The Insurers argue that they have no duty to defend because there are no allegations made in the underlying complaints that Illinois Tool caused injuries to any underlying plaintiff during the periods covered by their policies. That assertion is incorrect. While it is clear from the record, and the parties do not dispute, that Illinois Tool is unlikely to actually be found liable in the underlying suits, that question is not before us. Our inquiry must focus on whether the facts pled by the underlying plaintiffs, if true, would potentially bring the claims within coverage. *Lorenzo v. Capitol Indemnity Corp.*, 401 Ill. App. 3d 616, 619 (2010); *Illinois Emcasco*, 2013 IL App (1st) 120735, ¶ 12. We must even consider false and groundless allegations. *Id*. When we analyze the underlying complaints under that standard, it is clear that the Insurers have a duty to defend.

¶ 11   Throughout the proceedings in the trial court, the parties relied upon representative examples of the underlying complaints rather than insisting on an examination of thousands of complaints. To some extent, the parties continue that process in their appellate briefs. However, the parties do not clearly set forth which underlying complaints in the appellate record are considered representative examples of the different categories of complaints. Accordingly, we have examined the complaints that are attached as exhibits to Illinois Tool's fifth amended complaint, the complaints discussed in the parties' briefs, and a number of other complaints that are in the record.

¶ 12   Also during the trial court proceedings, the parties categorized the underlying complaints as follows: (1) complaints with no exposure dates; (2) complaints with first exposure prior to 1972; (3) complaints with first exposure between 1972 and 1976; and (4) complaints with first exposure between 1976 and 1987. In this appeal, the parties do not consistently adhere to a categorization scheme that is conducive to explaining their respective duties. After examining the record, we have determined that we can best address the merits of this appeal by dividing the underlying complaints into groups based on whether they contain allegations of: (1) direct liability with exposure dates during a policy period; (2) direct liability with unstated injury or exposure dates; (3) pure successor-in-interest liability claims; and (4) a combination of direct liability and successor-in-interest claims. We will address the parties' arguments concerning allocation where it is warranted.

¶ 13                    Direct Liability Claims, Exposure During a Policy Period

¶ 14   The first category of complaints we address is the group in which the underlying plaintiff alleges that he was exposed to an Illinois Tool product during at least some point within a relevant policy's period.

¶ 15   In Steinberg v. BP Amoco Chemical Co., No. 05 L 857 (Cir. Ct. Madison Co.), the plaintiffs named Illinois Tool individually as a defendant. Steinberg specifically alleges that he was "exposed to and inhaled, ingested or otherwise absorbed benzene which was contained in products which were designed, manufactured, sold or distributed by *** Illinois Tool." Steinberg alleges that his exposure to benzene occurred during his employment as a machinist, maintenance and mechanical worker from 1963 to 1972, and as a millwright and machinist from 1973 to 2002. For the rest of the complaint, the defendants are lumped

together and the allegations are against the group as a whole. Steinberg goes on to allege how his exposure to benzene caused the leukemia he developed.

¶ 16     In Ramsey v. Anchor Packing Co., No. 07c-08-279 (Del. Super. Ct. New Castle Co.), Illinois Tool is named individually as a defendant. Ramsey alleges that his exposure occurred during his employment from 1960 to 2001 at which times he was "wrongly exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers *** [that] were manufactured, sold, distributed, installed by *** [Illinois Tool]." Again, the plaintiff goes on to allege how his exposure to the aforementioned products caused his injuries, but generally states that it was "Defendants" that caused the harm. The plaintiff does differentiate among the defendants in the other counts of his complaint, but he divides the defendants between manufacturers and distributors of asbestos products and his former employers. Illinois Tool is categorized as an asbestos manufacturer and distributor and Ramsey claims that Illinois Tool is liable in that capacity.

¶ 17     In Andre v. A.O. Smith Corp., No. 03-11573 (La. Civ. Dist. Ct. Orleans Parish), the plaintiffs named Illinois Tool individually as a defendant and included it in the group of "welding defendants." The plaintiffs named other corporations in their capacity as successors in interest, but made no such distinction for Illinois Tool. Each of the plaintiffs in the case alleges exposure to welding fumes sometime from 1950 to 1987. The plaintiffs allege that "the Welding Defendants, and each of them, were manufacturers, suppliers and/or distributors of manganese-containing welding products" that proximately caused the plaintiffs' injuries.

¶ 18     In Jones v. A&E Products Group LP, No. 07L323 (Cir. Ct. Madison Co.), the plaintiff named Illinois Tool as an individual defendant. Jones alleges, among other things, that "from 1972 to 2001, he was exposed to and inhaled, ingested or otherwise absorbed benzene and other hazardous products which were designed, manufactured, sold or distributed by *** Illinois Tool." Jones further alleges that his exposure to benzene resulted in him developing leukemia.

¶ 19     Again, while only being representative of a much larger group, the complaints discussed above allege direct liability against Illinois Tool for injury resulting from exposure to Illinois Tool's products during at least some portion of the relevant policy periods. If we compare the allegations in the underlying complaints with the relevant policy provisions as our precedent requires (Illinois Emcasco, 2013 IL App (1st) 120735, ¶ 12), the Insurers clearly have a duty to defend this category of cases, even if the allegations are, in fact, groundless. In this category of cases, the underlying complaints do not even mention Illinois Tool as a successor company, despite making that distinction for other named defendants. The unequivocal claims made in these complaints is that Illinois Tool, itself, made or distributed harmful materials during the policy periods that caused the underlying plaintiffs' injuries.

¶ 20     To accept the Insurers' position on this category of cases would be to equate the duty to defend with the duty to indemnify. But it is well settled that an insurer's duty to defend is broader than its duty to indemnify and an insurer may be obligated to defend against causes of action and theories of recovery that are not in fact covered by the policy. Illinois Masonic Medical Center v. Turegum Insurance Co., 168 Ill. App. 3d 158, 162 (1988). The threshold that an underlying complaint must meet to trigger a duty to defend is minimal. Continental Casualty Co. v. Donald T. Bertucci, Ltd., 399 Ill. App. 3d 775, 776 (2010). The insurer's knowledge that extrinsic facts not pled in the complaint will ultimately defeat any coverage

obligation does not negate its duty to defend in the first place if the complaint, on its face, presents a claim potentially within the insurance policy's coverage. *Chandler v. Doherty*, 299 Ill. App. 3d 797, 802 (1998); *Lorenzo v. Capitol Indemnity Corp.*, 401 Ill. App. 3d 616, 621 (2010).

¶ 21 It is true that in the majority of the underlying complaints in this category the plaintiffs use "group pleading" or "shotgun pleading" to implicate Illinois Tool. But the insurer bears the burden of the underlying plaintiffs' broad drafting. See *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 35 (the underlying complaints should be liberally construed in favor of a duty to defend); *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 407 (2004) (ambiguities in the underlying complaint should be resolved in favor of a duty to defend); *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007 (2000) (questions of coverage should not hinge exclusively on the draftsmanship skills of the plaintiff in underlying action). Irrespective of whether or not Illinois Tool will ultimately be found liable in these underlying cases, the Insurers agreed to bear the burden of defending against the putatively groundless allegations. Only with knowledge of an extrinsic fact does it become apparent that, contrary to the express allegations in the underlying complaints, Illinois Tool was not in the business of manufacturing or distributing welding products before 1993. That extrinsic fact is akin to an "affirmative matter" in Illinois practice, a dispositive fact that must be proved to obtain a finding of no liability. The Insurers agreed to provide a defense for cases based on groundless allegations and, thus, to bear the cost of disproving groundless allegations on Illinois Tool's behalf. The Insurers have a duty to defend this category of cases.

¶ 22                                        Direct Liability Claims, Unstated Exposure or Injury Date

¶ 23 The second category of complaints we address is the group in which the underlying plaintiff alleges that exposure to an Illinois Tool product resulted in an injury, but does not set forth when the exposure occurred or when the injury manifested.

¶ 24 In Grubbs v. Lincoln Electric Co., No. 1:04CV18608 (N.D. Ohio 2004), the plaintiff named Illinois Tool individually as a defendant. Grubbs then alleged that "[a]ll of the Defendants are or were manufacturers, sellers, suppliers or large industrial consumers of welding products or conspiracy defendants." Grubbs never differentiates between the defendants again, but continues on to explain that "the defendants" are liable for their involvement in the manganese production and distribution industries. Grubbs does not allege any specific dates of exposure or injury.

¶ 25 In Hilton v. American Optical Corp., No. 05cv520 (Dist. Ct. Colo.), Illinois Tool is named individually as a defendant. In the complaint, Hilton cursorily alleges that he was exposed to dangerous chemicals and other materials from paint. He does not allege when the exposure occurred. He concludes that his injuries were caused by the negligence of defendants. There are no specific allegations regarding Illinois Tool's role or the time of exposure, but it is simply grouped along with all other defendants as a proximate cause of his injury.

¶ 26 No Illinois cases directly address the question presented by this category of cases, but we are guided by a well-settled principle followed by Illinois courts: that vague, ambiguous allegations against an insured should be resolved in favor of finding a duty to defend.

¶ 27    An insurer can only refuse to defend if the allegations of the underlying complaint preclude any possibility of coverage. *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 28. An insurer may not refuse to defend its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). In the underlying cases here, the ambiguous or unstated time period must be resolved in favor of a duty to defend. The bare allegations of the underlying complaints leave open the possibility that the plaintiffs' exposure or injury occurred during the policy periods. Accordingly, the underlying allegations do not foreclose coverage.

¶ 28    A few nonbinding but persuasive cases likewise guide our analysis. In *Hugo Boss Fashions, Inc. v. Federal Insurance Co.*, 252 F.3d 608 (2d Cir. 2001), the court discussed examples of uncertainty in underlying claims and how those uncertainties influence an insurer's duty to defend. The court went on to explain how there are at least three kinds of uncertainty that can give rise to a duty to defend. *Id*. at 620. One such uncertainty, the court explained, is factual: Did the injury occur in a time, place, or way that is covered by the policy? *Id*. Each of these factual uncertainties will ultimately be resolved, but until they are, the insurer cannot avoid its duty to defend. *Id*.

¶ 29    The time of the injury is the factual question in this case. Based on the allegations against Illinois Tool in this category of cases, the time of the injury is a factual uncertainty that, until resolved, gives rise to the duty to defend.

¶ 30    The *Hugo Boss* court continued, "[w]here, for instance, a complaint alleges harm caused by an insured's negligence in maintaining a building, and the insurance contract covers damages resulting from negligent maintenance generally, but excludes damages due to negligent maintenance of elevators, if the complaint does not specify where in the building the injury occurred, there will be uncertainty as to whether coverage is required." *Id*. at 621-22. From this, the court found that a duty to defend exists. *Id*. at 622. The court then explained that the insurer could expediently eliminate its duty to defend by demanding a bill of particulars and resolving the ambiguity in the underlying action. *Id*. However, the court made clear, the duty to defend lasts "until the factual ambiguity is resolved in favor of the insurer." *Id*.

¶ 31    In *Maxum Indemnity Co. v. Eclipse Manufacturing Co.*, 848 F. Supp. 2d 871, 883 (N.D. Ill. 2012), one of the insurers argued that it did not have a duty to defend because the underlying complaint contained no allegation that the wrongful conduct occurred during its policy period. The court found that although the two expressly stated occurrences of wrongful conduct were not within the policy period, the indications that the wrongful conduct began in 2001 and occurred on other occasions "raised the possibility" that the wrongful conduct occurred while the insurers' policies were in effect. *Id*. Thus, the *Maxum* court found the insurers had a duty to defend. *Id*.; see also *Colony National Insurance Co. v. Unique Industrial Product Co.*, 487 F. App'x 888, 892-93 (5th Cir. 2012) (vague underlying allegations as to when an injury was caused do not clearly and unambiguously demonstrate that the claim falls outside the scope of coverage so a duty to defend exists). Based on the foregoing, the Insurers have a duty to defend this category of cases.

¶ 32    However, this category of cases brings the issue of allocation into focus. After the final policy issued by the Insurers expired in 1987, Illinois Tool chose to self-insure. Thus, where

there is no exposure date alleged, we cannot know whether the underlying plaintiff is claiming that he was exposed to the harmful materials or that the injury manifested during a policy period or instead during the time Illinois Tool was self-insured. The Insurers argue that for the period after 1987, Illinois Tool assumed the risks of litigation and, therefore, if we require them to bear the full burden of defending these cases, we would be imposing obligations on them for a period of time that they never agreed to provide coverage or a defense.

¶ 33 The relevant policies provide that the Insurers will defend Illinois Tool against "any suit" and pay "all sums" for claims of personal injury against it, but the policies also state that the injury must take place during the policy period in order to be covered. The trial court rejected the Insurers' request for a *pro rata* allocation of the burden of providing a defense and concluded that "all triggered policies are jointly and severally liable for defense for the particular period in which the duty to defend arises" and found that the Insurers must bear the burden of all defense costs.

¶ 34 The Illinois Supreme Court rejected a *pro rata* allocation approach in *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987), and we followed the reasoning therein in *John Crane, Inc. v. Admiral Insurance Co.*, 2013 IL App (1st) 1093240-B. In those cases, the courts held that once a policy was triggered, the insurer was obligated to pay the total defense costs without proration. *Raymark*, 118 Ill. 2d at 56-57; *John Crane*, 2013 IL App (1st) 1093240-B, ¶ 56. Under *Raymark*, when the policies are "all sums" policies as they are here, any insurer that has a duty to defend is jointly and severally liable for the defense costs. As set forth above, the Insurers have a duty to defend this category of cases and, under the policies at issue, that duty remains until the factual ambiguities in the underlying complaints are resolved in favor of the insurer.

¶ 35                                    Pure Successor-in-Interest Claims

¶ 36 The third category of complaints we address is the group in which the underlying plaintiff alleges that Illinois Tool is liable for the conduct of another company. In these cases, the companies that Illinois Tool is called to answer for were acquired by Illinois Tool after the policy periods. The underlying plaintiffs allege that Illinois Tool is liable as a successor in interest to those companies.

¶ 37 In Park v. Akzo Nobel Coatings, Inc., No. BC350703 (Cal. Super. Ct. Los Angeles Co. Cent. Dist. 2006), the plaintiffs allege that Illinois Tool is liable as a successor in interest to LPS Laboratories. Park alleged that during his employment from 1979 to 2004, he was exposed to LPS 1 greaseless lubricant. He generally alleges that the lubricant was one of the chemical products that contained toxic chemicals that caused his leukemia. There are no allegations made against Illinois Tool individually.

¶ 38 In Stark v. Air Products & Chemicals, Inc., No. 03 L 15593 (Cir. Ct. Cook Co.), Illinois Tool is named individually as a defendant. Like many of the other underlying complaints examined above, Stark grouped Illinois Tool with the other named defendants to link it to the wrongdoing. However, Stark seeks to hold Illinois Tool liable for its alleged role in a purported conspiracy perpetrated by the National Electric Manufacturers Association (NEMA), and as a successor for the conduct of companies it acquired beginning in 1993. Stark then proceeded to allege that Illinois Tool became a member of NEMA beginning in 1993 when it acquired Hobart Brothers Company.

¶ 39    Illinois Tool has essentially conceded that it is not entitled to a defense in this category of cases. In its brief in this court, Illinois Tool explains that it "did not seek a defense for cases alleging solely successor liability." In the successor cases, the underlying allegations make clear that Illinois Tool could not be found liable for its own conduct. Illinois Tool is only alleged to be liable based on its affiliation with companies it acquired after the policy periods, and the underlying plaintiffs specifically allege that they seek to hold Illinois Tool liable for the conduct of those after-acquired companies. In these cases, the underlying plaintiffs pled the Insurers out of any duty to defend by making clear that their claims were only directed at predecessor companies or activities beginning in 1993. Illinois Tool did not bargain for a defense for claims made against it by way of any after-acquired companies or for conduct occurring after 1987. Accordingly, Illinois Tool is not entitled to a defense in this category of cases.

¶ 40                    Combination, Direct Liability and Successor-in-Interest Claims

¶ 41    The fourth category of complaints we address is the group in which the underlying plaintiff alleges that Illinois Tool is directly liable, but is also liable as a successor in interest.

¶ 42    In the various cases that make up the multidistrict federal litigation, *In re Welding Fume Products Liability Litigation*, No. 1:03-CV-17000, MDL Docket No. 1535 (N.D. Ohio 2003), Illinois Tool is named individually and as a successor in interest to Miller Electric Manufacturing Company and Hobart Brothers Company. The multidistrict litigation plaintiffs sought to hold Illinois Tool directly liable under six different theories. The district court found that Illinois Tool was entitled to summary judgment on those claims because, despite claiming that Illinois Tool should be individually liable, the plaintiffs could not produce any evidence that there was a causal connection between anything done by Illinois Tool and the plaintiffs' injuries. The predominant shortfall in the underlying plaintiffs' claims directly against Illinois Tool was that Illinois Tool was not in the welding product industry or any of the relevant trade associations prior to 1993. In its order granting summary judgment in Illinois Tool's favor, the district court explained that the direct liability claims against Illinois Tool "cannot succeed because there is no evidence that plaintiffs were harmed by an [Illinois Tool] product or that [Illinois Tool] had a duty to plaintiffs." However, Illinois Tool defeated the direct claims against it on an evidentiary basis, despite the fact that claims were, in fact, made directly against it. The multidistrict litigation plaintiffs also sought to hold Illinois Tool liable as a successor to Hobart Brothers and Miller Electric. In the same motion that it sought and was granted summary judgment on the direct liability claims, Illinois Tool sought and received summary judgment on the successor liability claims.

¶ 43    In Taylor v. Engineered Polymer Solutions, Inc., No. 07-6225 (Fla. Cir. Ct. 13th Dist.), the plaintiff named Illinois Tool individually as a defendant. Taylor alleged that he was exposed to harmful materials "manufactured and/or supplied and/or distributed by each of the collective defendants" during his employment "for many years preceding May 24, 2005." The plaintiff also alleges that Illinois Tool did business in Florida "by manufacturing and/or supplying and/or distributing industrial products for use by the Citizens of the State of Florida including the decedent." The plaintiff then proceeds to identify the Illinois Tool products to which he was exposed. In that section, he indicates that Illinois Tool is formerly

known as LPS Laboratories and Uni-Chem Corporation. Taylor goes on to generally allege that the defendants' products proximately caused him to develop leukemia.

¶ 44 In these cases, Illinois Tool is alleged to be directly liable and in each there is, based on the allegations, the possibility it could be found directly liable. As set forth previously in this opinion, where there are allegations of direct liability against Illinois Tool and the bare allegations leave open the possibility that the loss could be covered, the Insurers have a duty to defend. That principle applies to this category of cases. However, in each of these cases there are also claims seeking relief against Illinois Tool as a successor for which there would not ordinarily be a duty to defend. But under Illinois law, when an insurer has a duty to defend against one claim in a suit, it has a duty to defend against all claims, even if some of the claims standing alone would be beyond the scope of the policy. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194 (1976). Accordingly, in this category of cases, because the Insurers are required to provide a defense for the direct claims against Illinois Tool, they are required to provide a defense for the claims based on successor liability as well.

¶ 45 CONCLUSION

¶ 46 The duty to defend has been referred to as litigation insurance (*Perdue Farms, Inc. v. Travelers Casualty & Surety Co. of America*, 448 F.3d 252, 258 (4th Cir. 2006)), because it protects the insured from the expense of defending suits brought against it. From all indications, Illinois Tool should not be named as a defendant in the underlying cases. But it was insured against being wrongly sued. The Insurers here are responsible for defending Illinois Tool from the allegations against it, however groundless.

¶ 47 To summarize our holding, the Insurers must provide a defense for all cases where the bare underlying allegations, if proved, would render Illinois Tool individually liable. If Illinois Tool is alleged to be individually liable or liable both directly and as a successor, there is a duty to defend. The duty to defend is joint and several. If Illinois Tool is alleged to be liable solely as a successor, there is no duty to defend.

¶ 48 Accordingly, we affirm.