2022 IL App (1st) 210677-U

FIFTH DIVISION
OCTOBER 28, 2022

No. 1-21-0677

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | |
|---|---|
| THE CONTINENTAL INSURANCE COMPANY, ) | Appeal from the |
| CONTINENTAL CASUALTY COMPANY, and ) | Circuit Court of |
| TRANSPORTATION INSURANCE COMPANY, ) | Cook County. |
| ) | |
| Plaintiffs and Counterdefendants-Appellants ) | |
| and Cross-Appellees, ) | No. 13 CH 19918 |
| ) | |
| v. ) | |
| ) | |
| SARGENT & LUNDY, LLC, ) | Honorable |
| ) | Peter Flynn and |
| Defendant and Counterplaintiff-Appellee ) | Alison Conlon, |
| and Cross-Appellant. ) | Judges Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Delort and Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgments granting the defendant and counterplaintiff's motions for partial summary judgment and denying the defendant and counterplaintiff's requests for prejudgment interest are affirmed.

¶ 2    The plaintiffs and counterdefendants-appellants/cross-appellees, the Continental Insurance

Company, Continental Casualty Company, and Transportation Insurance Company (CNA), filed

a declaratory judgment action against the defendant and counterplaintiff-appellee/cross-appellant, Sargent & Lundy, LLC (S&L) in the circuit court of Cook County. S&L filed a counterclaim against CNA and subsequently filed four motions for partial summary judgment on its counterclaim. The circuit court granted S&L's motions for partial summary judgment, finding that CNA breached its duty to defend S&L and awarding damages, but denied S&L's requests for prejudgment interest. Both parties now appeal. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4     The facts of this case are complex but not in dispute. We summarize the relevant facts as gleaned from our review as follows.

¶ 5                                    The Policies

¶ 6     CNA issued several general liability insurance policies to S&L, an architecture and engineering firm, providing coverage between the dates of June 1, 1974, and June 1, 1980 (the policies). The policies required CNA to "pay on behalf of [S&L] all sums which [S&L] *** shall become legally obligated to pay as damages because of bodily injury or property damage ***." Relevant to this appeal, the policies further provided that CNA "shall have the right and duty to defend any suit against [S&L] seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent ***."

¶ 7     The policies contained a separate exclusion provision, titled, "Exclusion (Engineers, Architects or Surveyors Professional Liability)." The exclusion provision provided:

>          "It is agreed that the insurance does not apply to bodily injury or property
>
>     damage arising out of the rendering of or the failure to render any professional
>
>     services by or for the named insured, including

(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

(2) supervisory, inspection or engineering services."

¶ 8                                    The Underlying Actions

¶ 9      Beginning in the early 2000s, hundreds of asbestos lawsuits were filed against S&L (the underlying actions). The underlying actions were brought by or on behalf of employees of contractors, against S&L and numerous other defendants, alleging that the employees had been exposed to asbestos during the course of their employment in construction and maintenance work and had suffered asbestos-related diseases. The claims against S&L alleged that S&L had sold, distributed, manufactured, or installed asbestos or asbestos-containing products and had failed to warn of the dangers of inhaling asbestos fibers.[1] The underlying actions either did not allege when the asbestos exposure occurred or alleged an exposure period during the dates covered by the policies.

¶ 10     S&L tendered the underlying actions to CNA as one of its liability insurance carriers. CNA agreed to partially defend S&L in the underlying actions, pursuant to a reservation of rights. For the next several years, CNA partially reimbursed S&L for its defense costs in the underlying actions.

¶ 11     At some point later, the parties disagreed over how much of S&L's defense costs should be reimbursed by CNA. In August 2013, CNA stopped paying altogether for S&L's defense costs in the underlying actions.

¶ 12                                   The Declaratory Judgment Action

---

[1]These are the general allegations against S&L in the underlying actions, but we note that as the underlying actions are made up of hundreds of lawsuits, the varying complaints differed slightly in their specific facts and allegations.

¶ 13    On August 28, 2013, CNA filed a declaratory judgment complaint against S&L, seeking a declaratory judgment that CNA had no duty to defend or indemnify S&L in the underlying actions.[2] CNA's complaint was based on the policies' exclusion provision. Specifically, CNA argued that the exclusion provision barred all coverage in the underlying actions because the complaints in the underlying actions arose "from [S&L's] conduct with the respect to rendering or the failure to render professional services."

¶ 14                                    The Counterclaim

¶ 15    On October 21, 2013, S&L filed a counterclaim against CNA. S&L's complaint alleged that CNA had breached its contractual obligations to S&L by failing to pay the defense and indemnification costs in the underlying actions. Specifically, count I of S&L's complaint alleged breach of contract for CNA's failure to defend S&L in the underlying actions, counts II through IX alleged breach of contract for CNA's failure to indemnify the underlying actions, count X alleged consumer fraud, count XI alleged promissory estoppel, and count XII sought attorney's fees and statutory damages under the Illinois Insurance Code. Only count I is at issue in this appeal.

¶ 16    Subsequently, CNA filed an amended complaint and S&L filed an amended counterclaim complaint.

¶ 17                          Motions for Partial Summary Judgment

¶ 18    In 2015 and 2016, S&L moved for partial summary judgment on counts I and II of its amended complaint, as well as on count I of CNA's amended complaint. And CNA cross-moved for partial summary judgment on count I of its amended complaint. The trial court denied both parties' motions without prejudice. The trial court explained that it was unable to properly consider the issues in the context of the underlying actions as an entire group, since the lawsuits in the

_____

[2]CNA's declaratory judgment action is not at issue in this appeal.

underlying actions had varying facts and allegations.

¶ 19    S&L thereafter filed four separate motions for partial summary judgment, categorizing the varying lawsuits in the underlying actions into four different groups. On March 19, 2018, S&L filed its first motion for partial summary judgment, on count I of its amended complaint as to 23 of the lawsuits in the underlying actions, seeking a finding that CNA breached its duty to defend S&L in those 23 lawsuits. S&L's motion argued that the allegations in the 23 lawsuits triggered CNA's duty to defend S&L pursuant to the policies, which it failed to do. S&L's motion sought compensatory damages for its defense costs in the 23 lawsuits, as well as prejudgment interest. In response, CNA argued that S&L had the burden to show that the exclusion provision, as extrinsic evidence, did not bar coverage, since the 23 lawsuits arose out of S&L's architectural and engineering services.

¶ 20    On July 31, 2018, the trial court granted S&L's motion for partial summary judgment, finding that CNA breached its duty to defend S&L in the 23 lawsuits of the underlying actions. In so finding, the trial court stated:

> "The [appellate] court [in *Fidelity & Casualty Company of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301 (1983)] went out of its way to make clear that although you can decide a [declaratory judgment] action, particularly a [declaratory judgment] action based on a policy exclusion, on grounds that do not impact the nature of the underlying lawsuit, that do not necessarily involve putting a thumb on the nerves of the underlying lawsuit, you can't, unless you're willing to repeal [*Maryland Casualty Company v. Peppers*, 64 Ill. 2d 187 (1976)], and I'm not, allow an insurance company to get off the hook on the ground[s] of the underlying complaint -- on the grounds it was groundless, false

or fraudulent. It's as simple as that.

And here, so far as I can determine from the record that's been presented to me, CNA's grounds for refusing to provide any defense on the 23 cases that [S&L] has presented is that the allegations of the 23 underlying cases that caused [S&L] to be a defendant are, indeed, groundless, false or fraudulent.

That's simply not a reason for refusing to defend."

The trial court did not rule on S&L's damages claim and ordered CNA to file a response.

¶ 21    On November 5, 2018, S&L filed a second motion for partial summary judgment on count I of its amended complaint, seeking a finding that CNA breached its duty to defend a single lawsuit in the underlying actions, Vogel v. Afton Chemical Corporation *et. al.*, No. 10 L 1175. CNA again opposed the motion on the basis that the trial court should consider the exclusion provision as extrinsic evidence that it did not have a duty to defend S&L in the Vogel lawsuit.

¶ 22    On June 18, 2018, the trial court granted S&L's motion for partial summary judgment, finding that CNA breached its duty to defend S&L in the Vogel lawsuit. The trial court provided its reasoning:

"I am bound by [*Illinois Tool Works Inc. v. Travelers Casualty & Surety Company*, 2015 IL App (1st) 132350], and I think *Illinois Tool Works* is correct on this point. The duty to defend is classically based on the allegations in the underlying complaint, however problematic those allegations may be, and on the insurance policy. *Illinois Tool Works* makes that point, *** [a]nd if you push it, *Maryland Casualty versus Peppers* makes that point.

In this case[,] the Vogel claim alleged product liability against S&L. CNA's premise is that extrinsic evidence shows that the underlying complaint is simply

not true. That this Court is not going to get into.

CNA doesn't dispute that the allegations on the face of the Vogel complaint [] literally fall potentially within the ambit of coverage. And it only has to be potentially, it doesn't have to be demonstrated to be true. CNA's quarrel is with the veracity of those allegations. The veracity of those allegations in the context of the duty to defend simply is not up for debate."

The trial court's written order further denied S&L's request for prejudgment interest on damages in the Vogel lawsuit as well as in the 23 lawsuits from S&L's first motion for partial summary judgment. The trial court continued the matter for a ruling on damages.

¶ 23    In a subsequent order entered on August 14, 2019, the trial court awarded S&L damages in the amount of $386,270.72 for the defense costs in the 23 lawsuits and $466,244.63 for the defense costs in the Vogel lawsuit. In a detailed 15-page written order, the trial court analyzed the reasonableness of S&L's defense costs since CNA had raised reasonableness objections. Citing S&L's submitted invoices and the parties' history of bargaining over legal fees, the trial court held that CNA's objections to the hourly rate S&L paid for defense costs "fall short of the mark." The trial court stated: "The overall benchmark is reasonableness, not perfection." That written order also explained the trial court's reasoning for denying S&L's request for prejudgment interest. The trial court pointed out that the parties "had been sparring over defense cost reimbursement" and that the "reimbursement amount for which CNA is liable is not simply what S&L paid." The trial court stated: "To treat the situation as though the amounts were truly 'liquidated' would be to indulge in a fiction." Because the trial court found that the damages amounts were not easily determinable, it held that S&L was not entitled to prejudgment interest.

¶ 24    On June 23, 2019, S&L filed a third motion for partial summary judgment on count I of its

amended complaint, seeking a finding that CNA breached its duty to defend S&L as to 51 lawsuits in the underlying actions. As with the previous motions, S&L sought damages as well as prejudgment interest. CNA again opposed the motion on the basis that the exclusion provision barred coverage.

¶ 25 On December 13, 2019, the trial court, with a new judge presiding, entered an order granting S&L's motion for partial summary judgment, finding that CNA had breached its duty to defend S&L in the 51 lawsuits. The trial court stated:

"CNA urges me to look past the eight corners of the complaint[s] and [the policies] and rely on extrinsic evidence showing that the product liability allegations made against [S&L] are false, and in particular CNA relies heavily on the First District's 1983 opinion in the *Envirodyne* case, which has been cited in full during argument for the proposition that the Court should look to extrinsic evidence, which shows, according to CNA, that [S&L] performed architectural or engineering functions only; or in other words, professional services and therefore was engaging exclusively in professional services that are not covered.

The problem I think, as [the prior judge] previously and correctly identified is applying *Envirodyne's* holding about extrinsic evidence and whether it runs afoul of the clear reminder of the *Illinois Tool Works* case, the *Peppers* case and many other cases, that if the underlying complaint alleges facts potentially within policy coverage, an insurer must defend its insured, even if the allegations are groundless, false or fraudulent.

I am not willing to read *Envirodyne* as expansively as CNA is for all of the reasons already articulated at some length in [the prior judge's] prior rulings in the

case on the dates that I mentioned. Put more succinctly, the extrinsic facts that the *Envirodyne* Court relied on as I read it to determine the duty to defend, did not relate to an ultimate issue of liability and I don't think the same is true here, the way the cases pled -- the cases are pled."

¶ 26    The trial court awarded damages to S&L in the amount of $426,859.36 for the defense costs in the 51 lawsuits but denied S&L's request for prejudgment interest. In so ruling, the trial court stated: "I find that prejudgment interest is not appropriate and I will not award that on -- because the amount owed is not liquidated for the rationale set forth in [the August 14, 2019,] ruling."

¶ 27    Finally, on September 18, 2020, S&L filed its fourth and final motion for partial summary judgment on count I of its amended complaint, seeking a finding that CNA breached its duty to defend S&L in 168 lawsuits of the underlying actions. The parties stipulated to their arguments presented in the previous motions.

¶ 28    On October 30, 2020, the trial court entered a judgment granting S&L's motion for partial summary judgment, finding that CNA breached its duty to defend S&L in the 168 lawsuits. The written order stated that the ruling was based on the reasons set forth in the prior judgments. The trial court awarded S&L $1,458,716.91 in damages for the defense costs in the 168 lawsuits but denied S&L's request for prejudgment interest, again for reasons set forth in the prior judgments.

¶ 29                              Rule 304(a) Finding

¶ 30    CNA subsequently filed a motion for a Rule 304(a) finding as to the orders entered on July 31, 2018; June 18, 2019; August 14, 2019; December 13, 2019; and October 30, 2020 (the trial court's orders granting S&L's motions for partial summary judgment, awarding damages to S&L, and denying S&L's requests for prejudgment interest). On May 14, 2021, the trial court granted

the motion, finding that there was no just reason for delaying an appeal of those orders.

¶ 31                                    Notices of Appeal

¶ 32    On June 14, 2021, CNA filed a notice of appeal, challenging the trial court's orders granting S&L's motions for partial summary judgment and awarding damages. On June 17, 2021, S&L filed a cross notice of appeal challenging the trial court's order denying its requests for prejudgment interest. We now address both parties' appeals.

¶ 33                                       ANALYSIS

¶ 34    We note that we have jurisdiction to consider the appeals of both parties. The parties are challenging the trial court's orders entered on July 31, 2018; June 18, 2019; August 14, 2019; December 13, 2019; and October 30, 2020. Those orders granted partial summary judgment in favor of S&L on count I of its amended counterclaim complaint; awarded damages to S&L; and denied S&L's requests for prejudgment interest. However, those judgments were not final and therefore not immediately appealable because the other claims in both parties' complaints remained pending. "A judgment or order is final for purposes of appeal if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy, and, if affirmed, the only task remaining for the trial court is to proceed with execution of the judgment." *Brentine v. DaimlerChrysler Corp.*, 356 Ill. App. 3d 760, 765 (2005).

¶ 35    As a result, the trial court made a ruling pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Such a ruling was required in order for those judgments to be appealable while there were unresolved issues remaining in the trial court. See Ill. S. Ct. R. 304(a) ("If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or

appeal or both.") The provisions of Rule 304(a) require the trial court to make an express written finding that there is no just reason for delaying an appeal. Ill. S. Ct. R. 304(a); see also *American Advisors Group v. Williams*, 2022 IL App (1st) 210734, ¶ 10.

¶ 36 Because the trial court here entered a Rule 304(a) finding stating that there was no just reason to delay the appeal of the court's orders entered on July 31, 2018; June 18, 2019; August 14, 2019; December 13, 2019; and October 30, 2020; those interlocutory orders became appealable. CNA then filed a timely notice of appeal following that Rule 304(a) finding, and S&L subsequently filed a timely notice of cross-appeal, conferring this court with jurisdiction to hear both parties' appeals. Ill. S. Ct. R. 303(a)(1), (3) (eff. July 1, 2017).

¶ 37 Turning to the merits before us, we first address CNA's appeal. CNA presents the following issue: whether the trial court erred in granting S&L's motions for partial summary judgment, which found that CNA breached its duty to defend S&L in the underlying actions. CNA concedes that the allegations in the complaints of the underlying actions fall squarely within the policies, but nonetheless argues that the exclusion provision ultimately bars coverage in the underlying actions, and so it was not required to defend S&L. CNA accordingly claims that the trial court erred in not considering the exclusion provision as extrinsic evidence in ruling on S&L's motions for partial summary judgment.

¶ 38 Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Nine Group II, LLC v. Liberty International Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 34. "A genuine issue of material fact exists where the facts are disputed or where reasonable minds could draw different inferences

from the undisputed facts." *Nine Group II,* LLC, 2020 IL App (1st) 190320, ¶ 34. In appeals from summary judgment rulings, our review is *de novo*, which means we perform the same analysis that a trial court would perform. *Id.*

¶ 39    Summary judgment was granted in favor of S&L on the finding that CNA breached its duty to defend S&L in the underlying actions. In a duty to defend analysis, courts compare the allegations in the underlying complaint to the relevant provisions of the insurance policy, and if the facts alleged fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735, ¶ 12. Since CNA concedes that the allegations in the complaints of the underlying actions fall squarely within the policies, we need not engage in an analysis of that nature. Rather, we address CNA's argument that the trial court was obligated to look *outside* the underlying complaints and the policies; specifically, to extrinsic evidence of the exclusion provision to determine that, notwithstanding the allegations of the complaints falling within the policies, CNA still did not owe S&L a duty to defend it in the underlying actions. The premise of CNA's argument is that the exclusion provision bars coverage in the underlying lawsuits, since they arise out of S&L engaging in professional services.

¶ 40    To accept CNA's invitation to look beyond the allegations of the complaints and the policies would be to go against well-settled principles surrounding the duty to defend. As already stated: when the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises, which is broader than the duty to indemnify. *Illinois Tool Works Inc.*, 2015 IL App (1st) 132350, ¶ 9. This remains true even if the complaint allegations are groundless, false, or fraudulent. *Id.* "[A]n insurer may not justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations

set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). That is the full extent of the analysis when determining whether an insurer's duty to defend has been triggered.

¶ 41 Contrary to CNA's argument, this established analysis does not provide for looking to anything beyond the underlying complaint and the policies to determine the duty to defend. In other words, a court's analysis of whether a duty to defend arises will *not* include looking to any possible extrinsic evidence, even extrinsic evidence regarding ultimate coverage. Indeed, an insurer's duty to defend "is not diminished by the knowledge of extraneous facts which indicate or even demonstrate that the claim alleged in the complaint is, in fact, not covered." *Associated Indemnity Co. v. Insurance Company of North America*, 68 Ill. App. 3d 807, 816 (1979). Simply put, the exclusion provision is of no consequence here because it is undisputed that the allegations in the complaints of the underlying actions fall squarely within the policies, which triggered CNA's duty to defend S&L. And for determining the duty to defend, that is the end of the analysis.

¶ 42 We are mindful of CNA's reliance on *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446 (2010), and *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, for the proposition that the trial court was obliged to consider extrinsic evidence in this matter. In *Pekin*, our supreme court, citing *Envirodyne*, acknowledged that there are *certain circumstances* which would allow a court to look beyond the allegations of the underlying complaint to determine if the duty to defend has been triggered. *Pekin Insurance Co.*, 237 Ill. 2d 446, 461-62. Specifically, in *Pekin*, the insurance company filed a declaratory judgment action seeking a declaration that it did not have a duty to defend the insured in an underlying lawsuit because the allegations of the complaint were not covered by the insurance policy. *Id.* at 451-52. The trial court granted the insurance company's

motion for a judgment on the pleadings and entered an order declaring that the insurance company had no duty to defend the insured in the underlying lawsuit because its policy did not cover the claims asserted in that lawsuit. *Id.* at 453. On appeal, however, the Fifth District reversed the judgment for the insurance company, holding that, in addition to relying upon the allegations of the complaint in the underlying lawsuit to determine the duty to defend, the court could also consider the allegations raised by the insured in his counterclaim in the underlying lawsuit; specifically, whether those allegations triggered the self-defense exception in the insurance policy. *Id.* at 545. The Illinois Supreme Court agreed with the Fifth District, holding that the counterclaim, *as part of the pleadings in the underlying lawsuit*, must be considered in deciding a motion for a judgment on the pleadings regarding the duty to defend. *Id.* at 463.

¶ 43   Further, our supreme court noted that, importantly, its ruling did not resolve any issue critical to the underlying lawsuit. *Id.* at 467. Our supreme court explained:

> "[I]f we were to agree with [the insurance company] that the trial court properly granted its motion for judgment on the pleadings based solely on the underlying complaint and the intentional-act exclusion in the policy, we would, in essence, be condoning the resolution of the issue at the heart of the underlying lawsuit. Rather, where [the insurance company] filed a motion for judgment on the pleadings, it should only have been granted if the admissions contained within the pleadings revealed no genuine issue of material fact such that the movant would be entitled to judgment as a matter of law, and the court should have considered all well-pleaded facts of the *nonmoving* party, and the fair inferences to be drawn therefrom." [Emphasis in original]. *Id.*

¶ 44   CNA's reliance on *Pekin* is misplaced. Firstly, the facts are inapposite to the facts of the

instant matter, where there was no counterclaim in the underlying actions to consider as part of the pleadings. Not to mention that the matter before us is not CNA's declaratory judgment action, but rather S&L's breach of contract claim. Moreover, to consider the exclusion provision and whether it bars the policies' coverage of the underlying actions would ultimately resolve a critical issue in the underlying actions, *i.e.,* the scope of S&L's potential liability in the underlying actions, which would be improper. See *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 306 (the insurer may present evidence beyond the underlying complaint, *so long as it does not tend to determine an ultimate issue in the underlying proceeding*). We therefore reject CNA's argument that the trial court erred in not considering the exclusion provision as extrinsic evidence in ruling on S&L's motions for partial summary judgment.

¶ 45    Thus, no genuine issue of material fact exists as to whether CNA breached its duty to defend S&L in the underlying actions. The trial court accordingly did not err in granting S&L's motions for partial summary judgment and we affirm its judgment.

¶ 46    We next turn to S&L's cross-appeal. S&L presents the following issue: whether the trial court erred in denying its request for prejudgment interest. S&L asserts that its damages "were liquidated, certain, and easy to calculate," and points out that the trial court overruled all of CNA's reasonableness objections and did not conduct an evidentiary hearing in order to determine damages. S&L therefore argues that the trial court erred in denying S&L's requests for prejudgment interest and asks us to remand this case to the trial court with instructions to enter an award of prejudgment interest on S&L's damages.

¶ 47    An award of prejudgment interest is appropriate where it is authorized by statute, agreement of the parties, or warranted by equitable considerations. *4220 Kildare, LLC v. Regent Insurance Co.*, 2022 IL App (1st) 210803, ¶ 11. S&L requested prejudgment interest pursuant to

the Illinois Interest Act (Act), which provides, in relevant part: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***." 815 ILCS 205/2 (West 2018). It is well established that an insurance policy is a written instrument pursuant to the Act and that prejudgment interest may be recovered under such an insurance policy from the time money becomes due. *4220 Kildare, LLC*, 2022 IL App (1st) 210803, ¶ 13; *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 296 Ill. App. 3d 701, 708 (1998). However, to recover prejudgment interest, the sum due *must be liquidated or subject to an easy determination. 4220 Kildare, LLC*, 2022 IL App (1st) 210803, ¶ 13; *Couch v. State Farm Insurance Co.*, 279 Ill. App. 3d 1050, 1054 (1996). A trial court's decision regarding whether to award prejudgment interest is within the court's sound discretion, subject to reversal only upon abuse of discretion. *United States Fidelity & Guaranty Co. v. Alliance Syndicate Inc.*, 286 Ill. App. 3d 417, 419-20 (1997). A reviewing court will not substitute its judgment for that of the trial court in awarding or denying prejudgment interest, unless no reasonable person could adopt the trial court's position. *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶ 83.

¶ 48    Here, the trial court denied S&L's requests for prejudgment interest on the basis that S&L's damages were not liquidated or easily determinable. The record reflects that that was not an abuse of discretion. The parties disputed the reasonableness of S&L's legal fees and how much CNA is liable for, and as a result, the trial court was required to determine total damages. And if judgment, discretion, or opinion, as distinguished from calculation or computation, is required to determine the amount of the claim, it is unliquidated. *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶ 71 (quoting *Dallis v. Don Cunningham & Associates,* 11 F. 3d 713, 719 (7th Cir. 1993)).

¶ 49    S&L makes much of the fact that the trial court did not conduct any evidentiary hearings to determine damages and overruled CNA's reasonableness objections. Nonetheless, the record shows that the trial court thoroughly analyzed CNA's objections to the reasonableness of S&L's legal fees and entered a detailed written order discussing those objections. As the trial court noted in its analysis, the amount that S&L paid in defense costs is not the same as the amount CNA is liable for, which was an amount *carefully determined* by the trial court. Under these circumstances, the total damages were not easily ascertainable, and thus it cannot be said that no reasonable person would deny S&L's requests for prejudgment interest. See *4220 Kildare, LLC*, 2022 IL App (1st) 210803, ¶ 13. We therefore find that the trial court did not abuse its discretion in denying S&L's requests for prejudgment interest and we affirm its judgment.

¶ 50                                CONCLUSION

¶ 51    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 52    Affirmed.