# Illinois Official Reports

## Appellate Court

---

*National Union Fire Insurance Co. of Pittsburgh, PA v. DiMucci*,
**2015 IL App (1st) 122725**

---

| | |
|---|---|
| Appellate Court Caption | NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, as Subrogee of General American Life Insurance Company, a Missouri Corporation; and LOGAN AND COMPANY, INC., Plaintiffs-Appellees, v. ANTHONY P. DiMUCCI, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2725 |
| Filed<br>Rehearing denied | March 31, 2015<br>July 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CH-8399; the Hon. Stuart Palmer and the Hon. Thomas Allen, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Henry R. Simmons, Jr., of Lamont, and Adrian Vuckovich and Benjamin C. Butler, both of Collins Bargione & Vuckovich, of Chicago, for appellant.<br><br>Edward M. Kay, Kimbley A. Kearney, and Harvey R. Herman, all of Clausen Miller, P.C., of Chicago, for appellees. |

PRESIDING JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Lavin concurred in the judgment and opinion.
Justice Mason specially concurred, with opinion.


**OPINION**

¶ 1 This case presents a question of the interplay between federal bankruptcy law and the effect of bankruptcy judgments and stipulations regarding claims entered in bankruptcy court on state-court claims. For purposes of *res judicata*, we hold that a bankruptcy court default judgment on a state-law claim for fraudulent transfer of funds from a bankruptcy claim after the claim process is not a final judgment by a court of competent jurisdiction.

¶ 2 We hold that the circuit court nevertheless properly considered a stipulation entered into in a bankruptcy case, despite defendant's claim that his attorney did not have authority to enter into the stipulation. Stipulations are judicial admissions in the case in which they are made, but they are admissible in other cases as evidentiary admissions. Defendant never challenged that stipulation in the bankruptcy court and offered no evidence in this case other than his own self-serving conclusory affidavit. A self-serving affidavit with no other evidence does not create a genuine issue of material fact.

¶ 3 Where there is no evidence to controvert defendant's mortgagor's right to funds, the court's entry of summary judgment for the mortgagor's subrogee on its claim for unjust enrichment was proper.

¶ 4 Where a check was mistakenly sent to defendant's limited liability company (LLC) and then defendant refused to return these funds, the court's entry of summary judgment in granting a constructive trust was proper.

¶ 5 The court also did not abuse its discretion in awarding prejudgment interest where defendant knew the funds were the subject of a default judgment, a stipulation, and an assignment of rents.


¶ 6 BACKGROUND

¶ 7 Defendant, Anthony P. DiMucci, is the sole shareholder and president of DiMucci Development Corporation of Rockford (DiMucci Corporation). DiMucci Corporation, in turn, is the manager of DiMucci Development of Rockford, LLC (DiMucci LLC). Prior to 1998, DiMucci and his brother Salvatore each had a 50% interest in both the DiMucci Corporation and DiMucci LLC. After Salvatore died in July 1997, beginning in July 1998, DiMucci became the sole shareholder and president of DiMucci Corporation and the sole member of DiMucci LLC. DiMucci LLC developed and owned a shopping mall in Rockford Illinois. DiMucci Corporation, as the manager of DiMucci LLC, oversaw the construction work and maintenance of the Rockford mall.

¶ 8 Attorney Jerry H. Biederman, the managing partner of Neal Gerber & Eisenberg LLP (Neal Gerber), testified that his firm had represented DiMucci's corporation since its formation. Biederman provided legal representation to the DiMucci family and entities for approximately 20 years. Biederman was also vice president of DiMucci Corporation prior to

1998 when DiMucci became the sole shareholder. In December 1994, Montgomery Ward entered into a lease with DiMucci LLC to be the anchor tenant at the Rockford mall. In December 1996, DiMucci LLC obtained a loan from General American Life Insurance Company (GALIC) in the amount of $12,450,000 for the development of the Rockford mall. Biederman had the authority of DiMucci and his brother to negotiate the loan and execute the loan documents. DiMucci acknowledged at his deposition that, as an officer of DiMucci Corporation, Biederman personally executed the GALIC note, mortgage, and collateral assignment of lease or leases for DiMucci Corporation on behalf of DiMucci LLC. The GALIC loan was secured by a mortgage on the Rockford mall and a collateral assignment of leases.

¶ 9        Montgomery Ward defaulted on its lease and filed chapter 11 bankruptcy in 1997 in the United States Bankruptcy Court in the District of Delaware. DiMucci LLC and DiMucci Corporation retained the law firm of Neal Gerber to represent them in the Montgomery Ward bankruptcy case. Attorney Thomas Wolford was the primary lawyer at Neal Gerber responsible for representing DiMucci LLC and DiMucci Corporation in the Montgomery Ward bankruptcy case. Wolford caused a proof of claim to be filed on behalf of DiMucci LLC in the bankruptcy case in February 1998, seeking $16,391,766.59 for unpaid past and future rents on the defaulted lease. The net amount of DiMucci LLC's allowed claim in the bankruptcy case was $638,537.50.

¶ 10        DiMucci in turn defaulted on its loan from GALIC and, in November 1998, GALIC filed a complaint for foreclosure against DiMucci LLC. The property went to foreclosure sale and was purchased by GALIC. GALIC obtained a judgment of foreclosure on July 29, 1999. The judgment included an evidentiary finding that, as of July 29, 1999, DiMucci LLC owed GALIC $15,805,226.01. An order to confirm sheriff's sale, award possession, enter deficiency and deficiency judgment, approve final accounting and discharge receiver was entered September 29, 1999.

¶ 11        GALIC then filed a motion in the Montgomery Ward bankruptcy case seeking an assignment of DiMucci Corporation's claim against Montgomery Ward to GALIC. GALIC's counsel sent Wolford a draft stipulation to that effect. The stipulation was dated December 4, 2000, and was signed by counsel for Montgomery Ward, counsel for GALIC, and counsel for DiMucci Corporation. The stipulation provided that DiMucci Corporation transferred "all of its right, title and interest" in its allowed claim against Montgomery Ward to GALIC and provided that "[a]ll payments to be made on account of the Claim shall be made payable to [GALIC]." The stipulation also recited that it "has been approved by the Claims Resolution Committee." Defendant claims that Wolford signed this stipulation without his authority.

¶ 12        On February 6, 2001, Logan and Company (Logan), the bankruptcy court's noticing agent, caused Wells Fargo Bank to issue a check for DiMucci LLC's allowed claim against Montgomery Ward in the amount of $638,537.50 to DiMucci LLC. The check was received by DiMucci LLC in February 2001. Defendant avers in his affidavit that "[t]he funds were deposited and used as a partial payment toward the payment of [a] management and construction fee" that DiMucci LLC allegedly owed to DiMucci Corporation. DiMucci averred in his affidavit that "as the sole shareholder and officer of DiMucci Development Corporation of Rockford," he "assumed all responsibility for management of the [shopping mall] center, its tenants, rent collections and performance of necessary services for the tenants and for the common areas of the shopping center." Attached to and incorporated in defendant's

affidavit was an invoice defendant created, in his own individual name on letterhead, "Anthony DiMucci," to "DiMucci Dvlp. Corp. of Rockford," in the amount of $750,000. The invoice was dated January 1, 2001, after the claim was allowed and one month before DiMucci LLC received the bankruptcy claim check. There is no invoice in the record from DiMucci Corporation to DiMucci LLC for any balance for services owed by DiMucci LLC. The check was not deposited into the account for DiMucci LLC nor paid to DiMucci Corporation, however.

¶ 13    A copy of the bankruptcy claim check in the record shows that it was deposited by defendant directly into his personal account, the "Anthony DiMucci Grantor Trust" account at American National Bank. A copy of the check was attached to plaintiff's motion for summary judgment as an exhibit. In his interrogatory answers in the bankruptcy adversary case, also attached to plaintiff's motion for summary judgment, DiMucci stated that he deposited the check into this personal account.

¶ 14    The DiMucci LLC operating agreement states that all funds of DiMucci LLC shall be deposited in the LLC name in the LLC bank account. Defendant claims he had no notice that Wolford had entered into the stipulation with GALIC's counsel to transfer the allowed claim to GALIC. Defendant claims that these funds were applied as partial payment toward an outstanding "construction and management fee" owed by DiMucci LLC to DiMucci Corporation.

¶ 15    According to Biederman's deposition testimony, Wolford received a letter dated June 6, 2001 from counsel for GALIC that the payment of the claim from the Montgomery Ward bankruptcy estate had been sent to DiMucci LLC and requesting return of those funds. The Neal Gerber attorneys advised DiMucci to return the money to the bankruptcy estate. Wolford specifically advised DiMucci to return the check. DiMucci's response was that he "didn't feel that he needed to return the money." Biederman also explained to DiMucci the legal analysis that "even in the absence of the stipulation, the assignment of rents would appear to make it difficult for any claim to successfully prevail." DiMucci denied authorizing the stipulation and denied that there had been any assignment of rents. Biederman faxed a copy of the assignment of rents to DiMucci. DiMucci continued to deny that there was an assignment of rents. DiMucci refused to return the money.

¶ 16    In August 2001, GALIC filed an adversary complaint in the bankruptcy court in the District of Delaware alleging that the $638,535 payment of the allowed claim should have been made to GALIC as a result of the stipulation. GALIC named Montgomery Ward Holding Corporation, Logan, Wells Fargo Bank and "DiMucci Development Corporation of Rockford, LLC" as defendants. On October 18, 2001, the bankruptcy court entered a default judgment in the amount of $638,535 in favor of GALIC and against "DiMucci Development Corporation of Rockford, LLC" for failure to participate in the preparation of a pretrial order.

¶ 17    National Union is Logan's insurer and had issued an errors and omissions insurance policy to Logan. On or about March 28, 2003, National Union paid $540,000 to settle the adversary complaint on behalf of Logan, and GALIC released Logan.

¶ 18    On September 8, 2004, Logan registered the Delaware bankruptcy court's judgment in the United States District Court for the Northern District of Illinois. On May 18, 2005, Logan filed

- 4 -

and issued a citation to discover assets against DiMucci LLC in the Northern District of Illinois.[1]

¶ 19     In May 2005, National Union filed this action against defendant DiMucci personally, as subrogee of GALIC or, alternatively, as subrogee of Logan. National Union brought claims for unjust enrichment, fraud, conversion, and for the imposition of a constructive trust. Defendant filed a combined motion to dismiss, arguing that National Union's claims are barred by *res judicata* by the final judgment entered in the Montgomery Ward bankruptcy case because there was an identity of the two causes of action and the parties or their privies.

¶ 20     The circuit court granted defendant's motion to dismiss National Union's fraud claims on other grounds, but denied the motion to dismiss as to all remaining counts, and rejected defendant's *res judicata* argument. Defendant then answered National Union's complaint, raising *res judicata* as an affirmative defense. National Union moved to dismiss defendant's *res judicata* affirmative defense, and the trial court granted National Union's motion on May 29, 2008.

¶ 21     On May 18, 2009, National Union filed its first summary judgment motion regarding its claims for unjust enrichment and constructive trust, based on the stipulation in the bankruptcy court. National Union argued that the stipulation was valid because Wolford had either express or apparent authority to agree to the stipulation. Defendant denied that Wolford had any authority. On June 3, 2010, the court heard argument and considered the affidavits and deposition testimony. The court denied National Union's motion based on its finding that a material issue of fact existed regarding Wolford's authority to enter into the stipulation.

¶ 22     On July 8, 2011, National Union filed a second motion for summary judgment on its claims for unjust enrichment and constructive trust, again based on the stipulation. National Union also argued that the funds mistakenly paid to DiMucci LLC were owed to GALIC as a result of the foreclosure lawsuit and deficiency judgment entered against DiMucci LLC.

¶ 23     On September 27, 2011, the court granted National Union's motion for summary judgment on the counts for unjust enrichment and imposition of a constructive trust (counts III, IV, VII and VIII). This time, the court found that the stipulation was valid and in effect when the payment was made to DiMucci LLC and that the payment was a mistake and that "DiMucci is benefitting as a result of that mistake," which the court found was unjust.

¶ 24     The court heard the prove-up of damages for National Union and its motion for prejudgment interest pursuant to the Interest Act (815 ILCS 205/2 (West 2012)) or, in the alternative, pursuant to equity principles.[2] The court entered an order on March 22, 2012, finding that National Union was damaged in the amount of $540,000. In its order the court also granted National Union's motion for prejudgment interest at the annual rate of 4% from March 28, 2003, through the date of the March 22, 2012 order. The court rejected the claim for interest under the Interest Act but granted the motion based on equity, ruling that it was persuaded by the fact that there was a deficiency judgment in favor of GALIC at the time the check was issued to DiMucci LLC, and that it was also persuaded by the fact that the check was not deposited by defendant into the corporate account of DiMucci LLC. The order of

---

[1]The parties do not indicate what the disposition was, if any, of the citation to discover assets.

[2]Prior to ruling on this motion, the presiding judge, the Honorable Stuart Palmer, was appointed to the appellate court and the Honorable Thomas Allen then became the presiding judge.

- 5 -

March 22, 2012, entered judgment in favor of National Union in the total amount of $734,089.48. National Union's claims for conversion (counts II and VI) remained pending. The order included Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) language that "there is no just reason for delaying either enforcement or appeal of this Order."

¶ 25 On April 20, 2012, defendant filed a motion to reconsider the orders granting summary judgment and prejudgment interest in favor of National Union. The motion to reconsider was denied on August 14, 2012. Defendant appealed.

¶ 26 ANALYSIS

¶ 27 Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). A court ruling on a motion for summary judgment must construe the pleadings and the evidentiary material strictly against the movant. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010). "A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts." *Morrissey*, 404 Ill. App. 3d at 724. Our review of an order granting summary judgment is *de novo*. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 27. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 28 I. The Bankruptcy Court Judgment Is Not a *Res Judicata* Bar
Because It Is Not a Final Judgment by a Court of Competent Jurisdiction

¶ 29 The issue of whether a subsequent claim is barred by *res judicata*, an affirmative defense, is a question of law, which this court also reviews *de novo*. *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 312 Ill. App. 3d 1098, 1105 (2000) (citing 735 ILCS 5/2-619(a)(4) (West 1998), and *American National Bank & Trust Co. of Chicago v. Village of Libertyville*, 269 Ill. App. 3d 400, 403 (1995)).

¶ 30 Federal law governs the *res judicata* effect of cases litigated in bankruptcy court. Illinois courts are required to apply Illinois choice of law rules. *People v. Allen*, 336 Ill. App. 3d 457, 459 (2003); *Western States Insurance Co. v. Zschau*, 298 Ill. App. 3d 214, 223 (1998). Because the earlier judgment was rendered by a bankruptcy court, the federal law of *res judicata* or "claim preclusion" applies here. *Peregrine Financial Group, Inc. v. Trademaven, L.L.C.*, 391 Ill. App. 3d 309, 313 (2009) (federal law governs the *res judicata* effect of cases litigated in federal court); *Instituto Nacional de Comercializacion Agricola (Indeca) v. Continental Illinois National Bank & Trust Co.*, 858 F.2d 1264, 1271 (7th Cir. 1988) (Illinois choice of law rules indicate that the law of the jurisdiction where a judgment was rendered determines the *res judicata* effect of that judgment). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001)). We note that the bankruptcy judgment was rendered in a bankruptcy court in Delaware, which is in the Third Circuit.

¶ 31    In federal court, "[a] party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.' " *Marmon Coal Co. v. Director, Office of Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (quoting *Duhaney v. Attorney General of the United States*, 621 F.3d 340, 347 (3d Cir. 2010)). "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). The doctrine of *res judicata* bars suit on matters that were raised or could have been raised in previous litigation between the parties. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

¶ 32    We reject outright any contention that this action does not involve the same parties because DiMucci was not an individual defendant in the bankruptcy case or because the adversary complaint misnamed "DiMucci Development Corporation of Rockford, LLC" as a defendant. DiMucci was the director and sole shareholder of DiMucci Corporation at all relevant times, and DiMucci had an equal stake in defending the bankruptcy adversary case. See *Marine Midland Bank v. Slyman*, 995 F.2d 362, 365 (2d Cir. 1993) (officers, directors, sole shareholders and guarantors of corporation in indebtedness litigation were in privity with corporation for *res judicata* purposes); *Haefner v. North Cornwall Township*, 40 F. App'x 656, 657 n.2 (3d Cir. 2002) (finding corporation's attorney was in privity with corporation). DiMucci also signed verified responses in the adversary case as the president of "DiMucci Development Corporation of Rockford, LLC." Verified discovery responses in other cases constitute evidentiary admissions. See *Brummet v. Farel*, 217 Ill. App. 3d 264, 267 (1991). The check was made out to "DiMucci Development of Rockford LLC [*sic*]" and was deposited by DiMucci into DiMucci's own personal account. National Union is the subrogee of GALIC. We hold that the same parties are involved in both cases.

¶ 33    We also reject the contention that the present case is not based on the same cause of action as the bankruptcy adversary case in Delaware. In determining whether the cause of action is the same, the Third Circuit takes "a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.' " *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (quoting *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). The Third Circuit considers " 'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.' " *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (quoting *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). A differing theory of recovery is not dispositive of the issue. *Id*. Both the adversary complaint in the bankruptcy court and this action are based on the mistaken payment of the claim to DiMucci LLC and the wrongful acceptance and depositing of that check by DiMucci into his personal account. The acts complained of are the same, the material facts alleged are the same, and the same witnesses and documentation are involved. The two cases are based on the same cause of action. Thus, elements two and three are satisfied.

¶ 34    The very first element of *res judicata*, however, presents a problem in this case. The Third Circuit recognizes default judgments as final judgments with *res judicata* effect. See *In re McMillan*, 579 F.2d 289, 293 (3d Cir. 1978) (holding that a default judgment has *res judicata* effect and is conclusive in a subsequent suit based on the same cause of action

- 7 -

between the same parties or their privies). The issue here is whether a bankruptcy adversary judgment is a final decision in a "court of competent jurisdiction" when state-law claims are involved. There is much confusion in the federal courts regarding this issue.

¶ 35 "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). The 1978 Bankruptcy Reform Act mandated that bankruptcy judges "shall exercise" jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1471(b)-(c) (Supp. IV 1980). District courts have original but not exclusive jurisdiction over all Title 11 civil proceedings:

> "[N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (2006).

¶ 36 State courts and bankruptcy courts share concurrent jurisdiction to hear state-law cases that are related to bankruptcy proceedings:

> "[(c)] (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2) (2006).

¶ 37 The 1978 Bankruptcy Reform Act (1978 Act) mandated that bankruptcy judges shall exercise jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1471(b) (Supp. IV 1980). Under the 1978 Act, bankruptcy judges were "vested with all of the 'powers of a court of equity, law, and admiralty,' " with only a few limited exceptions. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 55 (1982) (plurality opinion) (quoting 28 U.S.C. § 1481 (Supp. IV 1980)). But bankruptcy judges were not afforded the protections of article III: life tenure and a salary that may not be diminished. *Id*. at 53.

¶ 38 In *Northern Pipeline*, the United States Supreme Court held that bankruptcy judges under the 1978 Act could not "constitutionally be vested with jurisdiction to decide [a] state-law contract claim" against an entity not otherwise a party to the proceeding. *Northern Pipeline*, 458 U.S. at 87 n.40. The Court held that a bankruptcy court lacked constitutional authority to enter final judgment on a debtor's state-law contract claim, which was a purely state-law claim, but no rationale commanded a majority. *Id*. at 63-87 (plurality opinion), 91 (Rehnquist, J., concurring, joined by O'Connor, J.). Specifically, the plurality noted that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights," which belong in an article III court. *Id*. at 71-72 (plurality opinion). The Court held that the 1978 Act was unconstitutional, at least insofar as it allowed a non-article III court to "entertain and decide" a purely state-law claim. *Id*. at 91 (Rehnquist, J., concurring, joined by O'Connor, J.).

¶ 39 In response to the Supreme Court's decision in *Northern Pipeline*, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984). See 28 U.S.C. § 151 *et seq*. Congress delineated three types of bankruptcy

proceedings: those (1) "arising under title 11," (2) "arising in" a Title 11 case, and (3) "related to a case under title 11." 28 U.S.C. § 157(a). In section 157 of the 1984 amendments Congress drew a new distinction between "core" and "non-core" proceedings. For "all core proceedings arising under title 11, or arising in a case under title 11, referred under [section 157(a)]," section 157(b)(1) permits bankruptcy judges to "hear and determine" the proceedi2ngs and to "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). A final judgment entered in a core proceeding is appealable to the district court, section 158(a)(1), which reviews the judgment.

¶ 40    For noncore proceedings "otherwise related to a case under title 11," section 157(c)(1), unless the parties consent to entry of judgment (28 U.S.C. § 157(c)(2) (2006)), the court is authorized only to "hear" the proceedings and to "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1) (2006). The district court reviews the bankruptcy judge's proposed findings of fact and then enters any final order or judgment. 28 U.S.C. § 157(c)(1) (2006).

¶ 41    The adversary complaint alleged it was "a core proceeding pursuant to 28 U.S.C. 157(b)(2)." The statute contains a nonexhaustive list of examples of core proceedings including "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H) (2006). The adversary complaint alleged that "Montgomery Ward, acting through Logan[,] *** caused the payment of the Claim to be sent to DiMucci, which act was contrary to the terms of the Stipulation," and sought return of the inappropriately cashed check funds. The adversary cause of action was a proceeding to avoid and recover a fraudulent conveyance.

¶ 42    Defendant argues that National Union's claims in this case are barred by *res judicata* because there was a final judgment and the adversary case was a core bankruptcy proceeding. Defendant argues that even if the claims in this case are not core proceedings, the judgment is still a final judgment because bankruptcy courts also have jurisdiction to hear noncore proceedings related to bankruptcies.

¶ 43    In *Sarno v. Thermen*, 239 Ill. App. 3d 1034 (1992), this court held that claims can be barred by *res judicata* only if they would have been core proceedings in bankruptcy court. *Sarno*, 239 Ill. App. 3d at 1046. This court held that a state-law conspiracy claim, although based in part on a wrongful bankruptcy court filing, would not have been a core proceeding in bankruptcy and thus the claim was not barred by *res judicata*. *Sarno*, 239 Ill. App. 3d at 1047. See also *Smith Trust & Savings Bank v. Young*, 312 Ill. App. 3d 853, 857 (2000) (holding that actions involving claims that could have been raised as noncore issues in bankruptcy proceedings are not barred by *res judicata*, because bankruptcy courts' noncore decisions lack finality).

¶ 44    Defendant argues nevertheless that *Sarno* "was decided over 20 years ago, before the Illinois Supreme Court changed the landscape of *res judicata* in Illinois in the landmark decision in *Hudson* [*v. City of Chicago*, 228 Ill. 2d 462 (2008)]," that "[a]ll of the federal circuits that have more recently considered this question have rejected the distinction between core and non-core claims for purposes of *res judicata*," and that "[t]he trend in Illinois and in the federal courts is toward a broad application of *res judicata*" to bar whatever could have been decided. Defendant also cites to a Third Circuit decision holding that noncore bankruptcy decisions can present a *res judicata* bar to a later action. See *CoreStates Bank*, 176 F.3d at 194-98.

¶ 45    Though the parties alternately cite state precedent and federal precedent from various circuits on the issue of *res judicata*, Illinois precedent does not apply to determining the *res judicata* effect of a federal court judgment; federal law governs. Also, all federal courts are bound to follow United States Supreme Court precedent. See *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

¶ 46    Fraudulent transfer causes of action have been determined by the United States Supreme Court to be noncore claims. The Supreme Court has also determined that although bankruptcy courts have jurisdiction to hear noncore proceedings, they do not have jurisdiction to enter final judgments on noncore causes of action. Thus, bankruptcy courts are not courts of "competent jurisdiction" that can enter final judgments on noncore state-law claims for *res judicata* purposes.

¶ 47    In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), the Court recognized that a state-law claim for fraudulent transfer was not a core claim. *Granfinanciera*, 492 U.S. at 56. The issue was whether there was a right to a jury trial in bankruptcy court for a state-law claim for fraudulent transfer. A bankruptcy trustee had brought an action to recover a fraudulent conveyance from third parties that had not submitted claims against the bankruptcy estate, and the third parties demanded a jury trial under the seventh amendment. In analyzing the issue, the Court noted that a claim for fraudulent transfer was not a core claim:

> "There can be little doubt that fraudulent conveyance actions by bankruptcy trustees–suits which, we said in *Schoenthal v. Irving Trust Co*., 287 U.S., at 94-95 (citation omitted), 'constitute no part of the proceedings in bankruptcy but concern controversies arising out of it'–are quintessentially suits at common law that more nearly resemble state-law contract claims ***." *Granfinanciera*, 492 U.S. at 56.

The Court thus held that fraudulent conveyance and preferential transfer action defendants who had not submitted proofs of claim against the bankruptcy estate were entitled to a jury trial, despite the fact that Congress had designated fraudulent conveyance actions as core bankruptcy proceedings. *Id*.

¶ 48    In *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011), the Court considered a constitutional challenge to another similar statutory designation of a core claim: counterclaims by the estate against persons filing claims against the estate. The Court held that although the bankruptcy court had statutory authority under section 157(b)(2) to enter a final judgment on a debtor's state-law tort counterclaim, it did not have constitutional authority to do so. *Stern*, 564 U.S. at ___, 131 S. Ct. at 2596-97. The *Stern* Court also revisited its analysis in *Granfinanciera* and reaffirmed *Granfinanciera*'s holding that avoidance actions are the kinds of cases that under the Constitution require adjudication by an article III judge. *Stern*, 564 U.S. at ___, 131 S. Ct. at 2614. The Court held that a counterclaim was similarly a state-tort action that existed "without regard to any bankruptcy proceeding." *Stern*, 564 U.S. at ___, 131 S. Ct. at 2618. The Court held that although the bankruptcy court had statutory authority under section 157(b)(2) to enter a final order on a debtor's state-law tort counterclaim, it did not have constitutional authority to do so. *Stern*, 564 U.S. at ___, 131 S. Ct. at 2596-97. The Court held that the counterclaim was neither derived from nor dependent upon bankruptcy law but instead was "a state tort action that exist[ed] without regard to any bankruptcy proceeding." *Id*. at ___, 131 S.

Ct. at 2618. The Court concluded "that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." (Emphasis omitted.) *Id.*

¶ 49    Most recently, in *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. ___, 134 S. Ct. 2165 (2014), the Court assumed, without deciding, that fraudulent transfer claims were so-called "*Stern* claims" that are noncore despite the fact that Congress had designated them as core under statute. The Court noted that the Ninth Circuit had held–and no party disputed–that article III does not permit fraudulent transfer claims to be treated as core. *Executive Benefits*, 573 U.S. at ___, 134 S. Ct. at 2174. The Court held that "[b]ut because the claims assert that property of the bankruptcy estate was improperly removed, they are self-evidently 'related to a case under title 11.' " *Executive Benefits*, 573 U.S. at ___, 134 S. Ct. at 2167-68. "At bottom, a fraudulent conveyance claim asserts that property that should have been part of the bankruptcy estate and therefore available for distribution to creditors pursuant to Title 11 was improperly removed. That sort of claim is 'related to a case under title 11 ***.' " *Executive Benefits*, 573 U.S. at ___, 134 S. Ct. at 2174. Thus, fraudulent transfer claims are not core but are instead under the category of claims "related to a case under title 11." But the Court did not squarely hold that bankruptcy courts cannot enter final judgments on fraudulent transfer claims because, in that case, the district court's *de novo* review on appeal of that decision and entry of its own final judgment cured any error. *Executive Benefits*, 573 U.S. at ___, 134 S. Ct. at 2174.

¶ 50    National Union cites to the above precedent but maintains that the fraudulent transfer and avoidance adversary action was a core proceeding resulting in a final judgment and argues instead that the present case is not barred by *res judicata* because it is based on different operative facts and alleges claims for unjust enrichment and constructive trust arising only under state law and founded in equity. As we noted earlier, both the adversary case and the present case are based on the same facts and cause of action: the mistaken payment and fraudulent transfer by DiMucci directly to his own personal account.

¶ 51    National Union argues that the adversary case was a core proceeding because it "involved matters central to the Bankruptcy Court's business–the rights and obligations of the Reorganized Debtor, its agent (Logan), a party that had filed a proof of claim (DiMucci LLC) and a creditor of DiMucci LLC (GALIC) that had secured an assignment of that claim approved by the Claims Resolution Committee." We note that the Supreme Court recognized an exception in *Granfinanciera* allowing bankruptcy courts to enter final judgment on a fraudulent transfer and avoidance action if it was part of a defendant's proof of claim process against the estate because then the action arises as part of the process of allowance and disallowance of claims in bankruptcy. *Granfinanciera*, 492 U.S. at 57-58. The Court cited to the earlier decision in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932), which held that "[s]uits to recover preferences constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." *Schoenthal*, 287 U.S. at 94-95. Quoting *Schoenthal*, the Court explained:

> " '[A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, when the same issue arises *as part of the process of allowance and disallowance of claims*, it is triable in equity.' *Id.*, at 336." (Emphasis added.) *Granfinanciera*, 492 U.S. at 58.

- 11 -

¶ 52    But in the present case the claim process had already been concluded and the fraudulent transfer adversary action arose afterwards and was not part of the claims process. DiMucci LLC's proof of claim was filed in the bankruptcy case in February 1998. DiMucci then defaulted on his loan from GALIC and the assignment of DiMucci's allowed claim to GALIC was effected by the stipulation signed in December 2000. GALIC then filed the adversary complaint in bankruptcy court in August 2001, well after the claims process had concluded. The claim for fraudulent transfer and avoidance thus was not part of the claims process in bankruptcy and does not fall within this narrow exception under *Granfinanciera*.

¶ 53    Taking all of the above precedent into account, we conclude that the weight of authority is that fraudulent transfer causes of action are not core proceedings in bankruptcy and, therefore, a bankruptcy court cannot enter a final judgment on such a claim. Thus, the bankruptcy court's earlier judgment is not a *res judicata* bar to the present case because there is no final judgment by a court of competent jurisdiction.

¶ 54                    II. The Bankruptcy Case Stipulation Was Properly Considered
                    in the Summary Judgment as an Evidentiary Admission and DiMucci
                    Failed to Show Any Genuine Issue of Material Fact

¶ 55    Nevertheless, even if *res judicata* does not apply the circuit court properly relied on the bankruptcy court stipulation. Defendant argues the court erred in granting summary judgment in favor of National Union because there was a material question of fact regarding the validity and enforceability of that stipulation. National Union argues that the court did not ultimately rely on the stipulation.

¶ 56    Despite National Union's attempt to characterize the circuit court's judgment otherwise, the circuit court indeed relied on the stipulation that was executed in the bankruptcy case. The pleadings in this case include pleadings from the bankruptcy case, which includes the stipulation. The stipulation was also attached as an exhibit to plaintiff's complaint. Stipulations are included in the category of judicial admissions, which may not be controverted in the case in which they are made. *Brummet v. Farel*, 217 Ill. App. 3d 264, 267 (1991). Evidentiary admissions include pleadings in a different case and may be controverted by a party. *Id*. The stipulation in the bankruptcy case was a binding judicial admission only in that case; in this case, it can only be considered an evidentiary admission and is not binding. See *Western States Insurance Co. v. Kelley-Williamson Co.*, 211 Ill. App. 3d 7, 12 (1991) ("Although a judicial admission is binding upon the party making it and cannot be controverted [citation], it is only a judicial admission in the proceeding in which it was made, and, in a subsequent case, it becomes an ordinary evidentiary admission which is not binding on the party who made it."). Though not conclusive, the stipulation is part of the material properly considered by the circuit court in ruling on summary judgment.

¶ 57    Defendant first argues that summary judgment was improperly granted where the court had initially denied the motion and then later changed its ruling because there was no new evidence. But a court is within its discretion to change its ruling and may even *sua sponte* reconsider a prior ruling. See *People v. Marker*, 233 Ill. 2d 158, 172 (2009) (recognizing that prior Illinois Supreme Court decisions "expressed the clear judicial policy which favors allowing a trial court to reconsider its rulings"). The court here did not abuse its discretion in changing its ruling on the second motion for summary judgment. Also, the very same fact that

there was no new evidence actually cuts against defendant–defendant did not come forward with any evidence which established that there was indeed a genuine issue of material fact regarding the stipulation.

¶ 58 Defendant also argues that the circuit court expressed reservations about defendant's liability in making its ruling when it stated: "How that gets to DiMucci individually is beyond me ***." But putting the court's comment in context clarifies that the court was not referring to placing liability but, rather, to the money being paid to DiMucci:

> "A third party, Logan, made a mistake. As a result of that mistake, DiMucci benefitted. *How that gets to DiMucci individually is beyond me*, but DiMucci benefitted as a result of the third party's mistake. *That money was not supposed to go there.* It's my intention to rectify that at least at this level." (Emphases added.)

¶ 59 The court's comment, placed in context, merely indicates that the court was perplexed as to how the check, instead of being properly issued to GALIC, was issued to DiMucci LLC and then wound up in DiMucci's personal account.

¶ 60 We find that DiMucci failed to create a genuine issue of material fact regarding the stipulation. While DiMucci argues his attorney had no authority to enter the stipulation, the rule is well recognized that generally a party is bound by his or her attorney's actions. See also *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9 (2004). This includes even the mistakes or negligence of his or her attorney. *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955, ¶ 18. A litigant has a duty to follow his or her own case. *Id.* "An attorney has the authority to make judicial admissions on behalf of a client by stipulation." *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 391 (1994) (citing *Fayette County Hospital v. Reavis*, 169 Ill. App. 3d 246, 252 (1988)). "Even absent express authority, a client is bound by a stipulation made by her attorney where the client fails to seasonably apply for relief from the stipulation." *Fitzpatrick* , 267 Ill. App. 3d at 391 (citing *In re Estate of Moss*, 109 Ill. App. 2d 185, 192-93 (1969)).

¶ 61 DiMucci claims he only learned of the stipulation after the fact. But, by his own allegations in this case, DiMucci learned of the stipulation when GALIC filed the adversary complaint in bankruptcy court in 2001. DiMucci thus had knowledge of the stipulation from the beginning of the adversary complaint proceeding. The bankruptcy court did not enter the default judgment until October 18, 2001. DiMucci inexplicably did not challenge the stipulation in the bankruptcy court at all prior to the default judgment and offers us no explanation why he failed to do so. DiMucci also did not appeal the default judgment to the United States District Court in Delaware pursuant to section 158 (28 U.S.C. § 158 (2006)).

¶ 62 DiMucci argues that the issue of whether he waived any objection to the stipulation is a trial matter for the jury and is inappropriate to resolve as a matter of law on a motion for summary judgment. We disagree. Where undisputed facts establish waiver as a matter of law, the court does not err in entering summary judgment on such grounds. "Questions of waiver and estoppel are left to the trier of fact where the material facts are in dispute or where reasonable people might draw different conclusions from the evidence." *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill. App. 3d 207, 220 (2008) (citing *Aetna Casualty & Surety Co. v. Oak Park Trust & Savings Bank*, 168 Ill. App. 3d 1000, 1004 (1988)). "However, when the material facts are undisputed and only one reasonable inference may be drawn from them, waiver and estoppel may be determined as a matter of law." *Sykes*, 384 Ill. App. 3d at 220 (citing *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004), and

*Aetna Casualty & Surety Co. v. Oak Park Trust & Savings Bank*, 168 Ill. App. 3d 1000, 1004 (1988)).

¶ 63     The facts in this case are undisputed that DiMucci did not take any steps to challenge the stipulation. DiMucci also did not respond to the summary judgment motion and the stipulation with any counteraffidavits. Failure to oppose a summary judgment motion supported by affidavits or stipulations by filing counteraffidavits in response is fatal. *Fitzpatrick*, 267 Ill. App. 3d at 391 (citing *Cano v. Village of Dolton*, 250 Ill. App. 3d 130, 137-41 (1993)).

¶ 64     Moreover, the party seeking relief from stipulation must make a clear showing that matter stipulated is untrue. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 391 (1994) (citing *In re Estate of Moss*, 109 Ill. App. 2d 185, 192-93 (1969)). See also *People v. Calvert*, 326 Ill. App. 3d 414, 420 (2001) ("Parties will not be relieved from a stipulation absent ' "a clear showing that the matter stipulated is untrue, and then only when the application is seasonably made." ' " (quoting *People v. Coleman*, 301 Ill. App. 3d 37, 48 (1998), quoting *Brink v. Industrial Comm'n*, 368 Ill. 607, 609 (1938))). DiMucci has made no showing that the matter stipulated–that GALIC had the right to DiMucci's Montgomery Ward allowed claim by virtue of his default on his loan–was untrue. On the contrary, the pleadings on file and their exhibits and the depositions establish that DiMucci's counsel had authority to enter the loan documents, including the assignment of rents. The pleadings and their exhibits and depositions on file also establish that under DiMucci's loan agreement GALIC was entitled to an assignment of Montgomery Ward's rents on the property once DiMucci defaulted on his loan, and was therefore entitled to an assignment of DiMucci's bankruptcy allowed claim for Montgomery Ward's rents due. National Union now as the subrogee of GALIC is entitled to the assignment of the Montgomery Ward bankruptcy claim. None of these facts are untrue. DiMucci made no evidentiary showing in this action to contradict the facts in the stipulation. The circuit court correctly relied on the stipulation in its grant of summary judgment.

¶ 65               III. Summary Judgment on Unjust Enrichment Was Properly Granted
                     Where Plaintiff's Right to the Funds Was Established and
               Defendant Transferred the Funds to Himself and Unjustly Enriched Himself

¶ 66     DiMucci disputes the relevant law on unjust enrichment, casting the claim in terms of a "duty" requirement, and argues that the court erred in granting summary judgment on the claim for unjust enrichment where DiMucci had no "duty" to return the money. The only authority DiMucci cites for this proposition is *Martis v. Grinnell Mutual Reinsurance Co*., 388 Ill. App. 3d 1017, 1024-25 (2009), where the court held that for a claim of unjust enrichment to be recognized, "there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Martis*, 388 Ill. App. 3d at 1025 (citing *Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95, 105 (2003)). *Martis* cited *Lewis* for this statement, which in turn cited *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 466 (1989), which involved an action brought by school districts against various suppliers of asbestos-containing material for strict products liability, fraudulent and negligent misrepresentation, breach of warranty, and restitution against various suppliers of asbestos-containing materials. The plaintiffs' claim for restitution sought reimbursement for expenditures they would incur to inspect, maintain, repair or remove asbestos-containing material in their buildings under section 115 of the Restatement of Restitution for "Performance of Another's Duty to the Public" (Restatement of Restitution § 115 (1937)). The

Illinois Supreme Court held that to establish a cause of action for restitution under section 115 of the Restatement for performance of another's duty to the public, "[t]here must be an independent basis which establishes a duty upon the defendant to act and the defendant must have failed to abide by that duty." *A, C & S, Inc.*, 131 Ill. 2d at 466. This holding by the supreme court in *A, C & S, Inc.* applied only to causes of action based on section 115 of the Restatement of Restitution, as applied in the context of a duty to the *public*, but was somehow co-opted by the court in *Lewis* and then repeated in *Martis* in the context of unjust enrichment. *A, C & S, Inc.*, as an action brought by school districts under section 115's provision for a duty to the *public*, is inapplicable in this case. *Martis* is not an accurate statement of the law on the equitable claim for unjust enrichment.

¶ 67 To prevail on a claim for unjust enrichment, a plaintiff must prove that the defendant "retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Where the benefit was transferred to the defendant by a third party, a claim for unjust enrichment is recognized in the following situations: (1) where the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) where the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) where the plaintiff for some other reason had a better claim to the benefit than the defendant. *Id*. at 161-62. A " 'cause of action based upon unjust enrichment does not require fault or illegality on the part of [the] defendant[ ]; the essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment.' " *Fortech, L.L.C. v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 818 (2006) (quoting *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 864 (1998)).

¶ 68 Here, defendant failed to show a genuine issue of material fact whether Logan should have caused payment on DiMucci LLC's allowed claim in the Montgomery Ward bankruptcy to be made to GALIC and whether the check was issued to DiMucci LLC by mistake, thus within the first factual situation for a claim for unjust enrichment under *HPI Health Care*. Other than his own affidavit, defendant has presented no other evidence that his counsel did not have authority to enter into the stipulation. Illinois Supreme Court Rule 191(a) governs affidavits in summary judgment motions and provides that "[a]ffidavits in support of and in opposition to a motion for summary judgment *** shall not consist of conclusions but of facts admissible in evidence." Ill. S. Ct. R. 191(a) (eff. July 1, 2002). "Unsupported assertions, opinions, and self-serving or conclusory statements do not comply with the rule governing summary judgment affidavits." *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1005 (2011) (citing *Jones v. Dettro*, 308 Ill. App. 3d 494, 499 (1999)). See also *Hagar v. State Farm Fire & Casualty Co.*, 154 Ill. App. 3d 689, 692 (1987) (holding that the "bald statement" in an affidavit that a sum of money was due was too conclusory to be entitled to consideration in support of a motion for summary judgment). Defendant literally has no other evidence to support his assertion that his counsel did not have authority to enter into the stipulation. The firm represented defendant and the DiMucci entities for a long period of time, and DiMucci acknowledged at his own deposition that his counsel had his authority to enter into the GALIC loan, which included the assignment of rents, and his counsel was specifically retained by DiMucci and had his authority to represent him in the bankruptcy case.

¶ 69     As noted above, even if Wolford did not have actual authority to enter into the stipulation, he had apparent authority sufficient to bind defendant, and defendant never challenged the stipulation.

¶ 70     Moreover, even accepting defendant's argument that the stipulation is ineffective, defendant failed to show any genuine issue of material fact that his counsel had his authority to enter into the mortgage and assignment of rents with GALIC and that GALIC, now National Union as subrogor of GALIC, was therefore entitled to payment on DiMucci LLC's allowed claim in the Montgomery Ward bankruptcy. It is undisputed that DiMucci defaulted on his loan from GALIC and that under the terms of the loan GALIC was entitled to an assignment of rents if DiMucci defaulted. Defendant failed to come forward with any evidence to contradict the fact that GALIC had the right to an assignment of defendant's claim from the Montgomery Ward bankruptcy for the rents due on the mortgaged property. Defendant's affidavit does not challenge this fact at all, and defendant provided no other counter-affidavits.

¶ 71     Defendant also argues that he cannot be personally liable for unjust enrichment under the Illinois Limited Liability Company Act (805 ILCS 180/1-1 *et seq.* (West 2010)), which provides that "[a] member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10 (West 2010). But in this case DiMucci was not sued for a liability or obligation of the company in his capacity as a member of the LLC but, rather, for his own individual liability for failing to return the funds he wrongfully deposited to his personal account. The complaint in this case alleges that DiMucci individually, and not on behalf of the LLC as a member, wrongfully retained the funds and transferred them to his personal account, resulting in unjust enrichment to himself personally.

¶ 72     Defendant is not allowed to benefit from defaulting on his loan from GALIC and simultaneously keeping payment on DiMucci's bankruptcy claim representing the unpaid rents on the property. The circuit court did not err in granting summary judgment to National Union on its claim for unjust enrichment.

¶ 73                    IV. The Remedy of a Constructive Trust Was Properly Granted
                    Where the Check Was Issued to Defendant's LLC by Mistake and
                             Defendant Refused to Return the Funds

¶ 74     Defendant next argues that the court erred in granting National Union summary judgment on its claim for a constructive trust where the court made no finding of any wrongful or unconscionable conduct by defendant. We may affirm on any basis appearing in the record. See *Jandeska v. Prairie International Trucks, Inc.*, 383 Ill. App. 3d 396, 398 (2008).

¶ 75     We first note that a constructive trust is a remedy, not a cause of action. See *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1018 (2010). A "constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct." *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 293 (1986). Generally, some form of wrongful or unconscionable conduct is a prerequisite to the imposition of a constructive trust. *Charles Hester Enterprises, Inc.*, 114 Ill. 2d at 293.

¶ 76     But although some form of wrongdoing is generally required for the imposition of a constructive trust, wrongdoing is not always a necessary element. *Smithberg v. Illinois*

*Municipal Retirement Fund*, 192 Ill. 2d 291, 299 (2000) (citing *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988), *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 628 (1997), and *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 740-41 (1995)). "When a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment." *Smithberg*, 192 Ill. 2d at 299 (citing *Norton*, 293 Ill. App. 3d at 628, *Frederickson*, 271 Ill. App. 3d at 741, and Restatement (First) of Restitution § 160 cmt. c (1937)). "A constructive trust is created when a court declares the party in possession of wrongfully acquired property the constructive trustee of that property because it would be inequitable for that party to retain possession of it." *Smithberg*, 192 Ill. 2d at 299.

¶ 77    "[A] constructive trust may be imposed in the case of mistake, although no wrongdoing is involved." *Smithberg*, 192 Ill. 2d at 299 (citing *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 55 (1994), and *Suttles*, 126 Ill. 2d at 193). Thus, a constructive trust is imposed (1) where actual or constructive fraud is considered as equitable grounds for raising the trust; (2) where there is a fiduciary duty and a subsequent breach of that duty; or (3) when duress, coercion or mistake is present. *Suttles*, 126 Ill. 2d at 193.

¶ 78    "Typically, the imposition of a constructive trust is a matter for the discretion of the trial court." *In re Estate of Trevino*, 381 Ill. App. 3d 553, 556 (2008) (citing *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 182 (1998)). But where the issue is whether there is a legal basis for the trial court's order, the standard of review is *de novo*. See *In re Estate of Trevino*, 381 Ill. App. 3d at 556. Here, defendant argues that there was no legal basis for finding him personally liable for the repayment of funds under the theory of unjust enrichment and that the court erred in granting summary judgment for a constructive trust. We have already reviewed the issue of the legal basis for a constructive trust *de novo* above, holding that there is no genuine issue of material fact that there is a legal basis for the court's grant of summary judgment on the unjust enrichment claim. We proceed to review the trial court's decision to grant a constructive trust for abuse of discretion.

¶ 79    Defendant concedes that wrongful conduct is not always a prerequisite (*Norton v. City of Chicago*, 293 Ill. App. 3d 620, 628 (1997)) and that a constructive trust may be imposed in the case of mistake. See *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291 (2000). Defendant again merely reiterates his argument that the stipulation was invalid. We have already addressed that argument above and we find defendant has failed to show any genuine issue of material fact regarding the stipulation that would change the result in this case. Even if defendant did not give his counsel express authority to enter into the stipulation, defendant did not challenge the stipulation and has not come forward with any evidence establishing that the facts in the stipulation are not true. Under the assignment of rents that was part of DiMucci's loan, GALIC, and now National Union as its subrogee, was entitled to the Montgomery Ward bankruptcy claim funds. The only evidence defendant offered to counter the stipulation and National Union's motion for summary judgment (both the first and second motions) was his own affidavit. As we held above, defendant's own self-serving and conclusory affidavit does not satisfy Supreme Court Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. July 1, 2002)). See *Gassner*, 409 Ill. App. 3d at 1005. There is no genuine issue of material fact that the check was paid to DiMucci LLC by mistake. "In order to impose a constructive trust, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the

party ought not be allowed to retain." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 334 (2005) (citing *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988)).

¶ 80     Nevertheless, the facts of this case also establish wrongdoing for the imposition of a constructive trust. DiMucci knew that GALIC had a claim to the bankruptcy claim funds based on the adversary case filed by GALIC and the advice of his own attorneys. DiMucci did not challenge the stipulation assigning that claim to GALIC and still has no legal basis to challenge GALIC's entitlement to those funds, as his attorney had express authority to enter into the GALIC loan documents, including the assignment of rents. DiMucci defaulted on a large loan for commercial property and attempted to wrongfully retain the rents due, when at that point GALIC was automatically entitled to an assignment of rents. Further, when DiMucci LLC received the bankruptcy claim check representing Montgomery Ward's rent due, DiMucci immediately deposited those funds not to his LLC account but to his own personal account. Then, even after being explicitly told by his attorneys that he had no legal claim to those funds, DiMucci refused to return the money. The circuit court did not abuse its discretion in granting summary judgment on the request for the remedy of a constructive trust.

¶ 81           V. The Court Did Not Abuse Its Discretion in Granting Prejudgment Interest
          Where Defendant Knew the Funds Were the Subject of a Default Judgment, a Stipulation,
                          and an Assignment of Rents and Yet Kept the Funds

¶ 82     Finally, defendant argues that the court erred in also awarding prejudgment interest because the court did not find that defendant acted in bad faith. An award of prejudgment interest is appropriate where it is "authorized by statute, agreement of the parties[,] or warranted by equitable considerations." *Tully v. McLean*, 409 Ill. App. 3d 659, 684-85 (2011). It has long been recognized that Illinois courts sitting in equity may award prejudgment interest even though not within the precise terms of the Interest Act (815 ILCS 205/2 (West 2012)) where, in the discretion of the trial court, interest is warranted by equitable considerations. *City of Springfield v. Allphin*, 82 Ill. 2d 571, 579 (1980); *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 257 (2006).

¶ 83     "A trial court's determination that equitable considerations support an award of prejudgment interest is reviewed for an abuse of discretion." *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 100 (citing *Prignano v. Prignano*, 405 Ill. App. 3d 801, 821 (2010)). "[T]he determination of the equities of the case is 'a matter lying within the sound discretion of the trial judge. [Citations.]' " *Kleczek v. Jorgensen*, 328 Ill. App. 3d 1012, 1025 (2002) (quoting *In re Estate of Wernick*, 127 Ill. 2d 61, 87 (1989)). "[A] reviewing court ought not substitute its judgment for that of the trial court unless no reasonable person could adopt the trial court's position." *Kleczek*, 328 Ill. App. 3d at 1025 (citing *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.*, 159 Ill. App. 3d 834, 846 (1987), and *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 831 (1994)).

¶ 84     Defendant argues that there cannot be an equitable award of prejudgment interest without some "bad conduct" or evidence that the funds were wrongfully obtained. Defendant argues that that the facts do not support a finding of bad conduct by defendant because at the time the check was cashed GALIC had an unsecured judgment against DiMucci LLC from the foreclosure action. Defendant also argues that the court made no finding of any wrongful conduct by the defendant.

- 18 -

¶ 85        Defendant cites to *Calumet Construction Corp. v. Metropolitan Sanitary District of Greater Chicago*, 178 Ill. App. 3d 415, 422-23 (1988), which held that prejudgment interest "may only be awarded *** where the funds are wrongfully obtained and illegally withheld." *Calumet Construction Corp.*, 178 Ill. App. 3d at 423. *Calumet Construction Corp.* relied on the interpretation of the federal Seventh Circuit Court of Appeals. The following year after *Calumet Construction Corp.* was decided, the Illinois Supreme Court decided *In re Estate of Wernick,* which made clear that prejudgment interest may be awarded according to the equities of a case. To the extent that *Calumet Construction Corp.* limits the circuit court's discretion in awarding prejudgment interest when equitable circumstances are present, it is not in accord with *In re Estate of Wernick*. The Illinois Supreme Court in *Wernick* explained the basis for an equitable award of prejudgment interest as follows:

> "The goal of proceedings sounding in equity is to make the injured party whole. The current trend being employed to accomplish this goal is to allow an award of interest on funds owing so that justice might be accomplished in each particular case. [Citation.] In Illinois, prejudgment interest may be recovered when warranted by equitable considerations, and disallowed if such an award would not comport with justice and equity." *In re Estate of Wernick*, 127 Ill. 2d at 86-87.

¶ 86        Although courts in many cases awarding prejudgment interest did find bad conduct and were affirmed, under Illinois Supreme Court precedent bad conduct is not a precise requirement. This court has since noted that, "[a]t most," the cases "suggest that *some element* of bad conduct must be present before an equitable award of prejudgment interest will be made, although *Wernick* makes it clear that *equitable awards of interest are not sanctions*." (Emphases added.) *Continental Casualty Co. v. Commonwealth Edison Co.*, 286 Ill. App. 3d 572, 580 (1997). An award of prejudgment interest is thus not meant as a punishment but, rather, to compensate the injured party in equity for the deprivation of use of the funds. "The goal of proceedings sounding in equity is to make the injured party whole." *In re Estate of Wernick*, 127 Ill. 2d at 86. In many cases awarding prejudgment interest, particularly in cases involving breach of fiduciary duty, the rationale for awarding prejudgment interest is to make the other party whole for the use of funds enjoyed at the deprivation of the injured party. See *In re Estate of Wernick*, 127 Ill. 2d at 87.

¶ 87        This concern is present in this case as well. DiMucci kept the funds for years, knowing that there was a stipulation assigning the funds to GALIC–which he never challenged–and knowing he had defaulted on his loan and that there was an assignment of rents due to GALIC (of which his counsel advised him). On March 28, 2003, National Union paid $540,000 to settle the adversary bankruptcy case filed by GALIC for DiMucci's refusal to return the funds, and thus National Union was entitled to those funds from DiMucci from that date. The circuit court did not abuse its discretion in determining that the equities weighed in favor of awarding National Union prejudgment interest for the deprivation of the funds all these years.

¶ 88        In any event, contrary to DiMucci's contention, the circuit court in fact did make a finding of wrongful conduct to support its award of prejudgment interest. The court found and ruled as follows in reaching its decision to grant prejudgment interest:

> "Mr. Di[M]ucci has a business. They take out a big loan. Montgomery Wards, his big tenant, goes down. They file bankruptcy and what flowed from there is an eventual foreclosure, and *** a deficiency judgment is entered against the corporation, the LLC, or maybe it was just a straight corporate entity, but we know it was not against Mr.

Di[M]ucci individually. That's clear from the documents and everyone concedes that. That happens in '99 I think.

* * *

*** Mr. Di[M]ucci and his company go in and they file in the bankruptcy court a claim because they didn't get rent from the bankrupted Montgomery Ward, and so they're in there on the bankruptcy ***.

* * *

So in February 2001, a check comes flying in and this is against a backdrop of what I just discussed. In '99, Mr. Di[M]ucci's companies and/or him individually lose the property, it's handed over to General American ***, and now they've got all rights, title, and interest to the real estate including *** the rents and anything else.

* * *

*** The debt–the debt that's owed to the bank is the corporate debt. The check that was issued in February of 2001 is–the payee is a corporate entity.

And to me this–that's very telling in terms of Mr. DiMucci's conduct. He knows he is owed rent from Wards, Montgomery Wards, and he has got a claim in there, but it's not in his individual capacity or his individual person, it's in his corporate person.

So he took the check and put [it] into a different account, not a corporate account. ***.

*** [B]ased on the totality of the circumstances here, I understand that both parties are waiting for their money, trying to get any crumbs that might fall off a table in a bankruptcy deal, and I agree with your statement, [defense counsel], that he is not charged with the obligation of running over and chasing down the money and giving it to *** the creditor ***, but I think when you look at the conduct there, the totality of the conduct in [*sic*] a reasonable person, a business person, and how–how he dealt with this check and didn't put it in the corporate account, you know, this has been going on for all these years, I think that under equitable principles that they are entitled to interest. And that will be my ruling."

¶ 89    The court thus did find bad conduct and based its ruling on the fact that DiMucci deposited a check into his personal account, knowing he was not entitled to those funds and knowing that the check was additionally made out to his LLC. DiMucci was the head of several corporate entities engaged in large commercial real estate transactions. It was over a year and a half since DiMucci had defaulted on the loan and thus knew or should have known that he was not entitled to any further collections of rents represented by the Montgomery Ward bankruptcy claim; GALIC was entitled to those funds.

¶ 90    The court also noted the fact that the litigation over the check continued for a protracted length of time, despite DiMucci's knowledge that GALIC was entitled to those funds representing Montgomery Ward's unpaid rent because DiMucci defaulted on his loan. Even if there was no fault at the time defendant deposited the check into his personal account, defendant continued to refuse to return the money after learning of the stipulation and has continued to refuse to return the funds despite any evidence that GALIC, and now National Union as its subrogee, was entitled to the funds.

¶ 91     We find that these facts are sufficient to show bad faith, and we hold that the court did not abuse its discretion in awarding prejudgment interest from March 28, 2003 through the date of its order granting damages and prejudgment interest.

¶ 92                                    VI. Defendant Forfeited His Appeal
                                   of the Court's Ruling on His Motion to Reconsider

¶ 93     In his notice of appeal, defendant also appealed the court's order of August 14, 2012, denying his motion to reconsider. But defendant makes no argument in his brief on appeal and fails to cite any authority and has thus forfeited this ground of review. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 94                                              CONCLUSION

¶ 95     The circuit court did not err in granting National Union's claims for unjust enrichment and constructive trust, with an award of prejudgment interest. Federal precedent holds that fraudulent transfer claims are not "core" bankruptcy proceedings, and thus the federal bankruptcy court's default judgment against DiMucci LLC was not a final judgment that would bar this case under the doctrine of *res judicata.* Nevertheless, the court properly relied on the stipulation in the bankruptcy case assigning DiMucci LLC's bankruptcy claim to GALIC where DiMucci never challenged that stipulation and offered no evidence to controvert GALIC's right to those funds other than his own self-serving conclusory affidavit, which does not create a genuine issue of material fact.

¶ 96     There is no genuine issue of material fact that DiMucci was unjustly enriched by depositing those funds directly to his personal account and retaining them, thereby establishing National Union's claim for unjust enrichment.

¶ 97     There is also no genuine issue of material fact that a constructive trust was a proper remedy, where the check was sent to defendant's LLC by mistake and defendant deposited the funds into his personal account and thereafter wrongfully refused to return the funds.

¶ 98     The court further did not abuse its discretion in awarding prejudgment interest where the equities of the case established that DiMucci failed to return the funds to which National Union was entitled as of March 28, 2003, through March 22, 2012, the date of the court's order after the prove-up of damages.

¶ 99     We also hold DiMucci forfeited any argument regarding the court's ruling on his motion for reconsideration where he included no argument or citations in his brief on appeal.

¶ 100    We affirm the order of September 27, 2011 entering judgment in favor of National Union and the March 22, 2012 order granting damages and granting prejudgment interest for the total amount of $734,089.48. We also affirm the order of August 14, 2012 denying defendant's motion to reconsider.

¶ 101    Affirmed.

¶ 102    JUSTICE MASON, specially concurring.

¶ 103    I concur in the result reached by the majority, which affirms the summary judgment entered in favor of National Union and the award of prejudgment interest. I write separately

- 21 -

because I do not concur in the majority's reasoning regarding the *res judicata* effect of the default judgment entered against DiMucci LLC in the Montgomery Ward bankruptcy case and believe that the default judgment entered in GALIC's adversary proceeding should be given preclusive effect on the issue of whether the payment made to DiMucci LLC was a mistake.

¶ 104  As I understand DiMucci's position invoking *res judicata* as a bar to National Union's claims against him personally, he contends that because GALIC's claim against DiMucci LLC in the bankruptcy adversary proceeding and National Union's claims against him in this case both concern the $638,537.50 payment made by Logan to DiMucci LLC, the two proceedings involve the "same claims" for *res judicata* purposes. DiMucci further concedes that as the sole member of DiMucci LLC, he is in privity with the LLC and National Union is the subrogee of GALIC, thus satisfying the "same parties" test. Finally, he contends that the default judgment entered against DiMucci LLC operates as a final judgment. Based on this reasoning, DiMucci argues that GALIC's failure to pursue in the adversary proceeding recovery from him personally under the various state-law theories raised in this case operates as a bar to National Union's present claims against him. This is clearly wrong. But it is not because the bankruptcy court was not a court of "competent jurisdiction" and thus could not finally adjudicate National Union's state-law claims. Rather, it is because GALIC's claim against DiMucci LLC and National Union's claims against DiMucci individually are not the "same claims."

¶ 105  GALIC's claim against DiMucci LLC was based on the stipulation (whether or not that stipulation was authorized by DiMucci), which required Logan and Wells Fargo to direct any payment on DiMucci LLC's bankruptcy claim for unpaid rent to GALIC, the lender that had foreclosed on the property after DiMucci LLC defaulted. The only claim before the bankruptcy court was whether, in fact, Logan and Wells Fargo acted contrary to the stipulation and clearly they did. Moreover, the adversary proceeding was the appropriate forum in which to litigate whether the stipulation was binding on DiMucci LLC, but since DiMucci LLC defaulted in the matter, that issue is foreclosed.

¶ 106  National Union's claims here do not seek to litigate whether the payment to DiMucci LLC was mistaken. That fact has already been finally established and is merely the starting point for National Union's current claims. National Union's claims against DiMucci personally are based on his conduct in converting the check mistakenly issued to DiMucci LLC by depositing it into his personal account and refusing to return the funds after being notified that he was not entitled to them. National Union's state law claims have nothing to do with the bankruptcy proceedings *per se*. GALIC and DiMucci individually were not creditors of Montgomery Ward's bankruptcy estate. National Union's claims against DiMucci individually do not stem from the bankruptcy itself nor would they be resolved in the claims allowance process. *Stern v. Marshall*, 564 U.S. ___, ___, 131 S. Ct. 2594, 2618 (2011). Thus, GALIC was not required to assert those claims in its adversary proceeding and *res judicata* does not preclude National Union, as subrogee of GALIC, from pursuing relief against DiMucci individually.

¶ 107  GALIC's adversary proceeding was indeed a "core" proceeding under the Bankruptcy Code. It concerned an allegedly mistaken payment from Montgomery Ward's bankruptcy estate to a creditor of the estate and thus concerns the administration of the bankruptcy estate. 28 U.S.C. § 157(b)(2)(A) (2006). The payment was effected by entities appointed by the bankruptcy court and operating under its authority. There is no other forum in which GALIC could have obtained the relief it sought: an order holding all of the defendants in the adversary proceeding–Montgomery Ward, Logan as the claims agent, Wells Fargo as the disbursing

agent and DiMucci LLC as the recipient–jointly and severally liable for the erroneous payment. Because the payment was made from Montgomery Ward's bankruptcy estate, the bankruptcy court had exclusive jurisdiction to determine whether the payment to DiMucci LLC was proper. 28 U.S.C. § 157(b)(1) (2006). And once the default judgment was entered against DiMucci LLC, DiMucci LLC and its privies, *i.e.*, DiMucci, were precluded from collaterally attacking that judgment. Thus, under *res judicata* the trial court could properly have precluded DiMucci from litigating the validity of the stipulation or attempting to prove that the payment to DiMucci LLC was proper.

¶ 108    On this point, DiMucci takes inconsistent positions. On the one hand, he contends that National Union is precluded from litigating its claims against him personally because he was in privity, for *res judicata* purposes, with DiMucci LLC, of which he was the sole member. Yet, DiMucci simultaneously contends that he could not have challenged the validity of the stipulation in the bankruptcy court because he was not a party to the adversary proceeding. This latter contention is without merit given that, as the sole member of DiMucci LLC, DiMucci could have challenged the authority of his company's lawyer to enter into the stipulation on behalf of DiMucci LLC. Further, the failure of DiMucci LLC to challenge the validity of the stipulation in the adversary proceedings precludes DiMucci from collaterally attacking the bankruptcy court's final order premised on the existence of the stipulation. I would affirm based on the preclusive effect of the default judgment entered in the adversary proceeding and the lack of any genuine issue of material fact as to whether DiMucci personally benefited from the mistaken payment at National Union's expense.